Coralie BARTLEY and William Clark Bartley, Appellants,

v.

STATE of Alaska, DEPARTMENT OF ADMINISTRATION, TEACHERS' RETIREMENT BOARD, Appellee.

No. S–10392.

Supreme Court of Alaska.

April 15, 2005.

Rehearing Denied April 25, 2005.

Kristine A. Schmidt, Kenai, for Appellants.

Kathleen Strasbaugh, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

After teaching for seven years with the North Slope Borough School District, Coralie and William Bartley retired under a retirement incentive program offered through Alaska's Teachers' Retirement System ("TRS" or "system"), a retirement plan for Alaska teachers administered by the Department of Administration, Division of Retirements and Benefits.[1] Although the Bartleys expected to qualify for normal retirement, the division determined that they were eligible only for early retirement; the division also calculated that they owed substantially more than they had expected to pay for prior years of creditable teaching service outside the system. After unsuccessfully challenging the division's rulings before the Teachers' Retirement Board and the superior court, the Bartleys filed this appeal. We conclude that the board and the superior court correctly applied the controlling law except in calculating the arrearages due for the Bartleys' creditable outside teaching service. We therefore remand for recalculation of these arrearages but affirm in all other respects.

## II. FACTS AND PROCEEDINGS

From 1968 to 1970 Coralie and William Bartley taught in Alaska for the Bureau of Indian Affairs ("BIA"). They then left the state and taught outside Alaska before returning in 1991 to teach for the North Slope Borough School District. The Bartleys first became TRS members when they began teaching for the borough school district; they spent seven years with the district, teaching in Point Hope and Kaktovik.

TRS members become eligible for retirement benefits under the provisions set out in AS 14.25.110. Subsection .110(a) of that statute describes the eligibility requirements for "normal" retirement benefits; subsection .110(b) specifies the requirements for "early"

retirement. Separate provisions of Alaska law allow TRS members to claim retirement credit for certain non-TRS service—military service, Alaska BIA service, and teaching service outside Alaska. To receive credit for this non-system service, however, TRS members must pay "arrearage indebtedness" representing contributions that they would have paid to the TRS had they been working as TRS members. Calculation of arrearage indebtedness is governed by AS 14.25.060. Under this provision, the exact amount of arrearage due in a given case depends on several variables, including the number of years and particular kinds of non-TRS service claimed and the time when the TRS member first joined the system.

During the 1997–98 school year, the Bartleys applied to the division for retirement under the system's 1996 retirement incentive program (RIP). The RIP allowed eligible teachers to claim three extra years of service in the system. In addition to this extra time and the seven years they had spent in the TRS, the Bartleys requested credit for prior years of teaching service in the Alaska BIA and outside the state. When they submitted their applications, the Bartleys expected that their total creditable time would allow them to receive normal retirement benefits; they also expected that the division would calculate their arrearage indebtedness for prior non-TRS service using the 7% annual rate specified in AS 14.25.060(a).

After receiving the Bartleys' applications, the division tentatively confirmed that they qualified for retirement under the RIP but did not specify whether they would be eligible for normal or early retirement. In further correspondence during the school year, the Bartleys questioned the division's estimated calculations of their arrearages and indicated that they were seeking normal retirement.

The division eventually calculated the Bartleys' arrearage indebtedness using two separate rates—one to establish the debt for their teaching service in the BIA and another to determine the debt for their service outside the state. Specifically, the division used

---

1. AS 14.25.010–.030.

the 8.65% rate specified in AS 14.25.060(d) to calculate the debt for their two years of BIA service and the full actuarial cost method specified in AS 14.25.060(b)(1) to determine indebtedness for their years of teaching service outside Alaska. The Bartleys questioned these calculations but submitted their resignations from the school district in January 1998 and left Alaska at the end of the school year in May. Soon after they left Alaska, the Bartleys received a letter from the division informing them that they would receive early retirement under AS 14.25.110(b) but did not qualify for normal retirement under subsection .110(a).

The Bartleys appealed to the TRS board, contesting the division's eligibility determination and challenging its calculation of their arrearage debt. After conducting an evidentiary hearing, the board affirmed the division's determinations and rejected the Bartleys' legal and equitable claims.

The Bartleys appealed next to the superior court and moved for a trial de novo. After Superior Court Judge Karen L. Hunt denied a trial de novo, Superior Court Judge Sharon L. Gleason issued a written opinion affirming the board's decision. Judge Gleason found that the division had properly calculated the Bartleys' arrearage indebtedness under AS 14.25.060 and had correctly determined that they were ineligible for normal retirement under AS 14.25.110(a)(1). Based on these findings, the judge rejected the Bartleys' claims that the division had violated their statutory and constitutional rights. The judge also found no basis for invoking estoppel against the division or granting other equitable relief. Last, Judge Gleason found, the division had neither deprived the Bartleys of the benefits promised under their RIP nor violated the implied covenant of good faith and fair dealing.

The Bartleys appeal.

2. When the superior court acts as an intermediate court of appeal, we review the agency's decision directly. *See Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). Generally, we exercise independent judgment when reviewing issues of statutory interpreta-

## III. DISCUSSION

■ On appeal, the Bartleys renew the claims they asserted below.[2] Having reviewed the briefs and the record, we agree with Judge Gleason's decision as to all but one issue: the question of what method must be used to calculate the Bartleys' arrearage indebtedness for their outside teaching service. We turn to that issue first.

### A. Arrearage Indebtedness

The Bartleys' challenge to the determination of their arrearage indebtedness turns largely on the division's interpretation of AS 14.25.060. When the Bartleys first joined the TRS in 1991, AS 14.25.060 provided, in relevant part:

(a) If a member first joined the service before July 1, 1990, and has military service or Alaska Bureau of Indian Affairs (BIA) service, or if a member joined the system before July 1, 1978, and has creditable outside service, the member is indebted to the system as follows:

(1) At the time of first becoming a member of the system, the arrearage indebtedness is seven percent of the base salary multiplied by the total number of years of creditable outside, military, and Alaska BIA service. The administrator shall add compound interest at the rate prescribed by regulation to the arrearage indebtedness beginning July 1, 1963, or at the time the member first becomes eligible to claim the service, whichever is later, to the date of payment or the date of retirement, whichever occurs first.

. . . .

(b) If a member joins the system on or after July 1, 1978 and has creditable outside service, the member may claim this service. If claimed, the member is indebted to the system as follows:

(1) The arrearage indebtedness is the full actuarial cost of providing benefits for the service being claimed. Compound in-

tion. *Union Oil Co. of California v. State, Dep't of Revenue*, 560 P.2d 21, 23 (Alaska 1977). But this broad power of review does not necessarily preclude us from deferring to an agency's reading of statutory language. *Id.* at 25.

terest at the rate prescribed by regulation shall be added to the arrearage indebtedness beginning the date the actuarial cost is established to the date of payment or the date of retirement, whichever occurs first.

. . . .

(d) If a member first joined the system on or after July 1, 1990, and has military service or Alaska BIA service, the member's indebtedness shall be determined under (a) of this section except that the percentage multiplier is 8.65 percent.[3]

Here, the division calculated arrearage indebtedness for the Bartleys' prior BIA service using subsection .060(d)'s 8.65% multiplier; the division calculated the arrearage for their outside service under the full actuarial cost method set out in subsection .060(b)(1). In affirming the division's and board's determinations that these provisions applied to the Bartleys' case, the superior court reasoned:

Alaska Statute 14.25.060(a) applies to determine arrearage indebtedness with respect to two types of non-TRS service: (1) military or BIA service when the member "first joined the service before July 1, 1990" and (2) outside service when the TRS member "joined the system before July 1, 1978." This subsection, however, is modified by subsection (d), which raises the percentage multiplier to 8.65 percent for military or BIA service "if a member first joined the system on or after July 1, 1990."

In the superior court's view, "[b]ecause the Bartleys performed the BIA service before 1990 they are entitled to have their arrearage indebtedness for that service calculated using a percentage multiplier, rather than actuarial cost. But because they did not join the TRS system until after July 1, 1990, the correct multiplier is 8.65 percent." Following the same approach, the court concluded that subsection .060(b)(1) governed the Bartley's arrearage indebtedness for outside service and that the Bartleys' outside teaching service therefore did not qualify as creditable service governed by subsection .060(a)(1).

■ The Bartleys challenge the board's and superior court's interpretation of AS 14.25.060, maintaining that it conflicts with the plain meaning of subsection .060(a). They assert that, by requiring seven percent of the base salary to be "multiplied by the *total number* of years of creditable outside, military, and Alaska BIA service,"[4] subsection .060(a) necessarily prohibits "service splitting"—in other words, treating outside service and BIA service differently.

We agree that the challenged interpretation conflicts with the plain meaning of AS 14.25.060(a). The express terms of subsection .060(a) apply to the Bartleys' situation because the Bartleys previously served in the Alaska Bureau of Indian Affairs and "first joined the service before July 1, 1990."[5] The formula spelled out in this subsection requires an eligible claimant's entire "arrearage indebtedness" to be calculated at the rate of "seven percent of the base salary multiplied by the total number of years of creditable outside, military, and Alaska BIA service."[6] In the Bartleys' case, subsection .060(d) partly modifies subsection .060(a): because the Bartleys first joined the TRS— "the system"—after July 1, 1990, subsection (d) substitutes a multiplier of 8.65% for the 7% multiplier specified in subsection (a). In all other respects, however, subsection (d) leaves subsection (a)'s method of calculating arrearages unchanged, expressly requiring "the member's indebtedness . . . [to] be determined under (a) of this section except that the percentage multiplier is 8.65 percent."[7] As the Bartleys correctly point out, the plain language of subsection .060(a) requires the same multiplier to be used in calculating arrearages for *all* creditable non-TRS service: "At the time of first becoming a member of the system, the arrearage indebtedness is seven percent [or 8.65 percent if subsection .060(d) applies] of the base salary

**3.** AS 14.25.060(a)(1) has since been amended. *See* ch. 92, § 4, SLA 2004 (substituting "system" for "service").

**4.** AS 14.25.060(a)(1) (emphasis added).

**5.** *Id.*

**6.** *Id.*

**7.** AS 14.25.060(d).

multiplied by *the total number of years of creditable outside, military, and Alaska BIA service.*[8]

The superior court ruled that subsection .060(d)'s reference back to subsection .060(a) applied only to the Bartleys' prior BIA service—in other words, that their arrearages for creditable BIA service should be calculated under subsection .060(a) "except that the percentage multiplier is 8.65 percent."[9] By contrast, the superior court reasoned, the Bartleys' indebtedness for their outside service had to be calculated by the actuarial cost method set out in subsection .060(b) because that subsection best described the Bartleys' situation: subsection .060(b) expressly requires arrearages to be determined by "the full actuarial cost of providing benefits" "[i]f a member joins the system on or after July 1, 1978, and has creditable outside service."[10] Yet as already pointed out above, the plain language of subsection .060(d) militates against this interpretation because it designates subsection .060(a) as the proper method of calculating arrearages for the "member's indebtedness" without expressly limiting that indebtedness to periods of military or BIA service.

■ Of course, the plain meaning of a statute does not always control its interpretation, for we have recognized that legislative history can sometimes alter a statute's literal terms. But under Alaska's sliding-scale approach to statutory interpretation, "the plainer the language of the statute, the more convincing contrary legislative history must be."[11] Here, we find no legislative history contrary to the plain meaning of AS 14.25.060. In fact, the version of this provision that immediately preceded the one applicable to the Bartleys' case reinforces the plain meaning of AS 14.25.060(d), as we described it above.

Before 1990, AS 14.25.060 set only two rates that could be used in calculating a new TRS member's arrearage indebtedness for prior creditable non-TRS service.[12] The first rate was spelled out in former subsection .060(a). That provision specified that "the arrearage indebtedness is seven percent of the base salary multiplied by the total number of years of creditable outside, military, and Alaska BIA service."[13] Former subsection .060(a) applied this rate to two distinct sets of TRS members: those with creditable "military service or Alaska Bureau of Indian Affairs (BIA) service," regardless of when they joined the TRS; and those with "creditable outside service," but only if they "joined the system [the TRS] before July 1, 1978."[14]

The second arrearage rate set out in former AS 14.25.060 was described in subsection

---

8. AS 14.25.060(a)(1) (emphasis added).

9. AS 14.25.060(d).

10. AS 14.25.060(b) & (b)(1).

11. *Alaskans For Efficient Gov't Inc. v. Knowles,* 91 P.3d 273, 275 (Alaska 2004) (quoting *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1019 (Alaska 1998)).

12. Specifically, former AS 14.25.060 provided, in relevant part:

(a) If a member joined the system before July 1, 1978 and has creditable outside service, or if a member has military service or Alaska Bureau of Indian Affairs (BIA) service, the member is indebted to the retirement fund as follows:

(1) At the time of first becoming a member of the system, the arrearage indebtedness is seven per cent of the base salary multiplied by the total number of years of creditable outside, military and Alaska BIA service. Compound interest at the rate prescribed by regulation shall be added to the arrearage indebtedness beginning July 1, 1963, or at the time of first becoming employed as a member, whichever is later, to the date of payment or the date of retirement, whichever occurs first.

. . . .

(b) If a member joins the system on or after July 1, 1978 and has creditable outside service, the member may claim this service. If claimed, the member is indebted to the retirement fund as follows:

(1) The arrearage indebtedness is the full actuarial cost of providing benefits for the service being claimed. Compound interest at the rate prescribed by regulation shall be added to the arrearage indebtedness beginning the date the actuarial cost is established to the date of payment or the date of retirement, whichever occurs first.

*See* ch. 128, § 3, SLA 1977, as amended by ch. 13, § 6, SLA 1980.

13. Former AS 14.25.060(a)(1) (set out in note 12, above).

14. Former AS 14.25.060(a).

.060(b)(1), which required arrearage indebtedness to be calculated at "the full actuarial cost of providing benefits for the service being claimed."[15]  By its own terms, subsection .060(b)(1) applied this rate only "[i]f a member joins the system on or after July 1, 1978 and has creditable outside service."[16] Moreover, because former subsection .060(a)(1) entitled any member with creditable military or BIA service to have the seven-percent rate applied in calculating arrearages for all prior creditable service—that is, military, BIA, *and* outside service[17]—the full-actuarial-cost method set out in former subsection .060(b)(1) implicitly excluded members with creditable outside service who were also entitled to claim either BIA or military service at seven percent under subsection .060(a)(1)—in other words, under former subsection .060(a)(1), subsection (b)(1)'s full-actuarial-cost provision would not apply to TRS members claiming creditable outside service *and* military or BIA service or those claiming only creditable outside service who joined the TRS before July 1, 1978.

An opinion issued by the Attorney General in 1982 confirms this plain-language interpretation of the pre–1990 version of AS 14.25.060:

> AS 14.25.060, as amended in 1977, divides the TRS membership into two groups, as follows:
>
> (1) those who either have military service or Alaska Bureau of Indian Affairs service, or who joined the system before July 1, 1978 and have creditable outside service of any kind, and
>
> (2) those who joined the system on or after July 1, 1978 and have creditable outside service.[18]

As the Attorney General interpreted the pre–1990 provision, the first group of members it defined had a vested right to have their arrearage indebtedness calculated under the non-actuarial method set out in subsection .060(a): "The statute in question, AS 14.25.060, extends this protection to those persons who *either* were *former members* on July 1, 1978, *or* who claim credit for military or Alaska BIA service."[19]  In the Attorney General's view, the statute would never subject these members to service splitting—that is, it would never require a TRS member who had a right to pay arrearages at seven percent for creditable BIA or military service to pay at the higher, full-actuarial-cost rate for concurrently claimed outside service:

> A person in the first group must pay seven percent of his or her base salary for each year of creditable outside service.  A person in the second group must pay full actuarial cost for all creditable outside service.  It is our opinion that the statutory classification is unambiguous and does not permit you to require any person who *either* was a *member* of the system before July 1, 1978 *or who* claims military or BIA service credit to pay the full actuarial cost of creditable outside service.[20]

In 1990, however, the legislature amended the TRS statutes to increase new TRS members' annual TRS contributions from seven percent to 8.65 percent beginning January 1, 1991.[21]  The change triggered the need to adopt a corresponding increase in the arrearage-indebtedness rate for TRS members first joining the system after the 1990 contribution increase.  This new class of TRS members could properly be charged for arrearages at the same increased rate they would pay for their annual TRS contributions—8.65 percent—even if they had prior military or BIA service that entitled them to escape paying for arrearages based on full actuarial cost.

The legislature addressed the need to define the arrearage rate for this newly created class by amending former AS 14.25.060(a) and adding a new subsection to AS 14.25.060,

---

15.  Former AS 14.25.060(b)(1).

16.  Former AS 14.25.060(b).

17.  Former AS 14.25.060(a)(1).

18.  1982 Op. Att'y Gen. No. J–66–738–81 (January 4, 1982).

19.  *Id.* at n. 1 (emphasis added).

20.  *Id.* (emphasis added).

21.  Ch. 97, § 1, SLA 1990 (amending AS 14.25.050(a) (1970)).

subsection .060(d).[22] The amendment to subsection .060(a) changed the definition of TRS members qualifying to have their arrearage indebtedness calculated at seven percent by excluding TRS members with creditable military or Alaska BIA service who first joined that service on or after July 1, 1990, the effective date of the legislation enacting the 1990 TRS contributions increase.[23] In turn, the newly added subsection .060(d) dealt with all members originally included in subsection .060(a) who had a vested right to claim prior creditable service at a non-actuarial rate but whose contribution rate was not frozen at seven percent. Specifically, subsection .060(d) defines this new group to include all TRS members with creditable military or BIA service who first joined the TRS on or after the 1990 amendment's effective date, July 1, 1990;[24] the subsection requires these members to pay arrearages at the increased rate of 8.65 percent, but continues to exempt them from full actuarial costs by mandating that "the member's indebtedness shall be determined under [subsection .060](a) except that the percentage multiplier is 8.65 percent."

Although subsection .060(d) does not explicitly mention outside service, this omission proves inconsequential. Under both the current and prior versions of subsection .060(a), only two ways exist for a TRS member with prior creditable outside service to escape paying full actuarial costs for arrearages: (1) by joining the TRS before July 1, 1978, which would vest the member with the right to a seven-percent arrearage rate as of 1978; or (2) by tying the outside-service claim to a claim for military or BIA service, which would peg the arrearage rate for the member's outside service to the rate that would govern the concurrent claim for military or BIA service. Hence, no TRS member claiming credit for prior outside service alone could ever be charged for arrearage indebtedness at the 8.65 percent rate set out in subsection .060(d).

We recognize that it is possible to construct a contrary meaning for subsection .060(d). Because that subsection specifically mentions only military service and BIA service, and does not mention creditable outside service, a question potentially arises whether that subsection's reference to "the member's indebtedness" was intended by the legislature to be limited to military or BIA service. Although the answer to that question is not necessarily self-evident from the text of subsection .060(d), the legislative history we discuss above convinces us that the legislature did not intend, when it enacted subsection .060(d) in 1990, to limit the cross-reference to subsection .060(a) to military or BIA service, and thus did not intend to exclude creditable outside service from application of the 8.65% interest rate.

In summary, then, the legislative history of section .060 reinforces the plain language of the current provision's subsection .060(d). We thus conclude that the statute's plain meaning applies here. When subsection .060(d) applies to part of a member's claim, the subsection's language requires that the member's entire arrearage indebtedness must be calculated following the method set out in subsection .060(a), except that the 8.65% multiplier adopted in subsection .060(d) replaces subsection .060(a)'s seven-percent multiplier. Because neither subsection .060(a) nor subsection .060(d) permits split calculation of arrearage indebtedness for claims mixing prior outside service with military or BIA service, the board's decision to calculate the Bartleys' outside service arrearages under subsection .060(b) must be reversed. These arrearages must be recalculated under the method set out in subsection .060(a)(1), except that an 8.65% rate must apply.

### B. Eligibility for Normal Retirement Benefits

The next issue we face is whether the board correctly found the Bartleys to be eligible only for early, rather than normal, retirement benefits. We agree with the superior court's decision to affirm the board on this point and adopt the well-reasoned dis-

22. Ch. 97, §§ 2, 3, SLA 1990.

23. Ch. 97, § 2, SLA 1990.

24. Ch. 97, § 3, SLA 1990.

cussion of this point set out in the superior court's Decision and Order, which we attach as an appendix to this opinion. We add the following observations to those made by the superior court.

■ As previously noted, the Bartleys' eligibility for normal retirement turns on the meaning of AS 14.25.110. Specifically, the Bartleys argue that they meet the requirements of subsection .110(a)(1) which provides for normal retirement benefits only when a TRS member "was first hired before July 1, 1975, has attained the age of 55 years, and has at least 15 years of credited service, the last five of which have been membership service or is otherwise vested in the system." [25] The division interpreted this provision's phrase "first hired" as referring solely to the date that a TRS member is first hired into a TRS position. But the Bartleys contend that the phrase includes the date a member is first hired into any creditable non-TRS service. Hence, the Bartleys insist, they qualify for normal retirement because they were first hired into the BIA service before July 1, 1975.

The superior court rejected the Bartleys' interpretation after carefully analyzing AS 14.25.110's history and purpose. To the extent that the court's thorough analysis leaves any room for ambiguity, we find it helpful to consider the division's interpretation of this provision. The division's 1991 handbook gave the following response to the question "When will I be eligible to retire and start receiving monthly benefits?":

> That depends on your age and TRS service. If you meet the minimum TRS service requirements described below and you were first hired *under the TRS:*

- before July 1, 1990, you can retire at age 55 for normal retirement or age 50 for early.

- after June 30, 1990, you can retire at age 60 for normal retirement or age 55 for early.

(Emphasis added.)

At their hearing before the board, the Bartleys acknowledged that they received and read this portion of the handbook and that they understood that the division's interpretation would not entitle them to normal retirement. Despite their knowledge of the division's interpretation, which was confirmed for them by a division representative, the Bartleys elected to take the position that the handbook explanation did not apply to them.

■ Although we generally rely on our independent judgment when we decide questions involving pure statutory interpretation, we have recognized that an agency's interpretation of a law within its area of jurisdiction can help resolve lingering ambiguity, particularly when the agency's interpretation is longstanding.[26] In such cases we have suggested that precedent counsels restraint and directs us to look for "weighty reasons" before substituting our judgment for the agency's.[27] Here, as reflected by its 1991 handbook, the division's interpretation of AS 14.25.110's "first hired" language is longstanding, and so provides additional support for the interpretation the superior court gleaned from the statute's history and purpose. Because the superior court's interpretation conforms with the division's consistent application of the statute, we hold that the superior court correctly rejected the Bart-

---

25. AS 14.25.110(a)(1).

26. *Union Oil Co. v. State, Dep't of Revenue,* 560 P.2d 21, 23, 25 (Alaska 1977); *cf.* 2B NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 49:05, at 52–53 (6th ed. 2000) ("Ordinarily, courts should give great weight to the frequent, consistent, and long-standing construction of a statute by an agency charged with its administration, particularly with respect to a statute that is susceptible to two different interpretations.").

27. *Kelly v. Zamarello,* 486 P.2d 906, 910–11 (Alaska 1971). *See also Bullock v. State, Dep't of Community & Reg'l Affairs,* 19 P.3d 1209, 1210 (Alaska 2001) (affirming the superior court's decision, after concluding that "the Department's interpretation is continuous, long-standing, and not arbitrary or capricious"); *Nat'l Bank of Alaska v. State, Dep't of Revenue,* 642 P.2d 811, 815 (Alaska 1982); *State, Dep't of Revenue v. Debenham Elec. Supply Co.,* 612 P.2d 1001, 1003 n. 6 (Alaska 1980).

leys' claim of entitlement to normal—rather than early—retirement.[28]

### C. Denial of De Novo Hearing

■ The Bartleys raise one additional claim not addressed in the superior court's Decision and Order: they argue that the court erred in denying their request for a trial de novo. We have previously recognized that the decision whether to allow a trial de novo is committed to the superior court's sound discretion.[29] Here, our review of the record reveals no abuse of discretion. As the superior court correctly noted in rejecting the Bartleys' various claims of procedural unfairness, the board gave the Bartleys an ample opportunity to develop and present all their claims. Because we see no procedural deficiency that would have required the superior court to hear new evidence on appeal, we find no abuse of discretion in the superior court's denial of the Bartleys' motion for a de novo hearing.

### IV. CONCLUSION

For these reasons, we REVERSE the board's calculation of the Bartleys' arrearage indebtedness for their prior creditable BIA service and REMAND for recalculation as provided in this opinion; in all other respects, we AFFIRM.

### APPENDIX

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT ANCHORAGE

### DECISION AND ORDER ON APPEAL

### I. INTRODUCTION

Coralie Bartley and William Clark Bartley appealed to the Teachers' Retirement Board

contending that the Division of Retirement and Benefits (1) had used an incorrect methodology to compute the cost to the Bartleys of purchasing additional retirement benefits based on the Bartleys' prior years of teaching outside of the State Teachers' Retirement System; and (2) had erred in concluding that the Bartleys were not eligible for normal retirement benefits, but only early retirement benefits. The Board affirmed the Division's determinations. The Bartleys now appeal the Board's decision.

### II. FACTS AND PROCEEDINGS

Coralie Bartley and William Clark Bartley (the Bartleys) both taught for the Bureau of Indian Affairs (BIA) in Alaska from 1968 to 1970. They then taught outside of Alaska for a number of years. Beginning in August 1991 and continuing through the end of the school year in 1998, the Bartleys taught for the North Slope Borough School District (the District). They became members of the State Teachers' Retirement System (TRS) when they joined the District in 1991.

During the last school year that they taught for the District, the Bartleys both applied to the Division of Retirement and Benefits (the Division) for normal retirement under a retirement incentive program (RIP) made statutorily available for a limited time. The Bartleys believed that their prior Alaska BIA service would permit them to buy additional TRS retirement benefits for their BIA and outside service at a rate calculated under AS 14.25.060(a). Under this statute, the purchase rate is calculated by using 7.0 percent as a base salary multiplier. The Bartleys also believed that after buying in two years of BIA service and at least six years of outside service they would be eligible for normal retirement at their then-current age of 55.

---

**28.** For essentially the same reasons, we agree with the superior court's disposition of the Bartleys' equitable and implied-covenant claims. In addition, we note that the Bartleys' proposed interpretation of the "first hired" provision appears to be textually implausible. Members of the military are rarely "hired" into military service; since military service is a chief component of creditable non-TRS service, it seems unlikely that the legislature would have chosen the term

"first hired" to refer generally to all creditable non-TRS service.

**29.** *State v. Dupere,* 721 P.2d 638 (Alaska 1986) (stating that claimants against the state do not have a right to trial de novo, but Appellate Rule 609 gives the superior court discretion to order a trial de novo).

The Bartleys first each requested TRS credit for their two years of BIA service. The Division calculated their arrearage indebtedness for that service under AS 14.25.060(d), which uses 8.65 percent as the base salary multiplier. The Bartleys later requested TRS credit for their years of outside teaching service. The Division calculated their arrearage indebtedness for that service using the full actuarial cost method of AS 14.25.060(b).

In May 1998, the Division informed the Bartleys that they were not eligible for normal retirement. Instead, under the Division's interpretation of the applicable statutes, the Division determined that the Bartleys were early retirees.

The Bartleys appealed the Division's decision to the Teacher's Retirement Board (the Board). The Bartleys argued that the correct interpretation of the applicable statutes required that their arrearage indebtedness be calculated at 7% for both their BIA and outside teaching, and that the Bartleys were entitled to normal retirement benefits. The Bartleys also contended that they had detrimentally relied on Division representations that they would be eligible for normal retirement.

The Board made factual findings and issued a written decision (Decision 99–4). The Board interpreted the applicable statutes in the same manner as the Division with regard to both the arrearage indebtedness and the early retirement issues. The Board also rejected the Bartleys' equitable estoppel claim.

The Bartleys appeal to this court from the Board's decision.

## III. DISCUSSION

### A. Standards of Review

Appellate courts review agency factual findings under the substantial evidence standard and will uphold factual findings if the agency record contains relevant evidence a reasonable person would accept to support them. *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

Courts use their independent judgment to decide questions of constitutional law and substitute their judgment for that of the agency to decide legal questions not involving agency expertise or fundamental policy choices. *Rollins v. State, Dep't of Revenue,* 991 P.2d 202, 206 (Alaska 1999); *Handley,* 838 P.2d at 1233.

In contrast, appellate courts review legal issues implicating agency expertise or fundamental policy choices only to ensure that the agency decision was not arbitrary, capricious, or unreasonable. *Bering Straits Coastal Management Program v. Noah,* 952 P.2d 737, 741 (Alaska 1998); *Handley,* 838 P.2d at 1233. The agency's interpretations of its own regulations are subject to review only to ensure the interpretations are reasonable and not arbitrary. *Handley,* 838 P.2d at 1233; *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975).

The interpretation of AS 14.25.060 and AS 14.25.110 and the application of these statutes to the Bartleys are not matters that involve agency expertise. Therefore, this court will substitute its judgment in interpreting these statutory provisions. Similarly, "whether equitable estoppel applies [to particular facts] is a question of law not involving agency expertise" that courts answer using their independent judgment. *State v. Schnell,* 8 P.3d 351, 355 (Alaska 2000); *see also Power Constructors, Inc. v. Taylor & Hintze,* 960 P.2d 20, 26 (Alaska 1998). On the estoppel issues, deference is due only to the agency's findings of fact.

### B. Interpreting AS 14.25.060

TRS members may claim retirement credit for military service, Alaska BIA service, or teaching outside Alaska, but must pay TRS "arrearage indebtedness" for the claimed years.

Alaska Statute 14.25.060 establishes several rates for calculating the arrearage indebtedness. Subsection (a) reads in relevant part:

> If a member first joined the service before July 1, 1990, and has military service or Alaska Bureau of Indian Affairs (BIA) service, or if a member joined the system before July 1, 1978, and has creditable

outside service, the member is indebted to the system as follows:

(1) At the time of first becoming a member of the system, the arrearage indebtedness is seven percent of the base salary multiplied by the total number of years of creditable outside, military, and Alaska BIA service. . . .

Subsection (d) provides:

If a member first joined the system on or after July 1, 1990, and has military service or Alaska BIA service, the member's indebtedness shall be determined under (a) of this section except that the percentage multiplier is 8.65 percent.

Also relevant is subsection (b)(1), which provides:

If a member joins the system on or after July 1, 1978, and has creditable outside service, the member may claim this service. If claimed, the member is indebted to the system as follows:

(1) The arrearage indebtedness is the full actuarial cost of providing benefits for the service being claimed. Compound interest at the rate prescribed by regulation shall be added to the arrearage indebtedness beginning the date the actuarial cost is established to the date of payment or the date of retirement, whichever occurs first.

The Bartleys asserted that subsection (a) was applicable to all of their years of non-TRS teaching service—for both the BIA and non-BIA service. The Division rejected this contention. With regard to the BIA service, the Division applied subsection (d). And with regard to the non-BIA outside service, the Division applied subsection (b). The Board affirmed the Division's interpretation.

1. *The Bartleys' arrearage indebtedness for their BIA service is properly calculated under AS 14.25.060(d).*

Alaska Statute 14.25.060(a) applies to determine arrearage indebtedness with respect to two types of non-TRS service: (1) military or BIA service when the member "first joined the service before July 1, 1990" and (2) outside service when the TRS member

"joined the system before July 1, 1978." This subsection, however, is modified by subsection (d), which raises the percentage multiplier to 8.65 percent for military or BIA service "if a member first joined the system on or after July 1, 1990."

The history of AS 14.25.060 suggests that subsection (d), with its higher multiplier, was intended to increase the percentage multiplier for arrearage indebtedness applicable to BIA service for members who did not join the TRS until after 1990. In 1977, AS 14.25.060(a) was amended to provide for a multiplier of 7.0 percent to calculate certain arrearage indebtedness:

If a member has military service or Alaska Bureau of Indian Affairs (BIA) service, or if a member joined the system before July 1, 1978, and has creditable outside service. Sec. 3, ch. 128, SLA 1977.

That description was retained when the statute was rewritten in 1980. *See* Sec. 6, ch. 13, SLA 1980. In 1990 the legislature changed 14.25.060(a) to its current language. Simultaneously, the legislature created AS 14.25.060(d):

If a member first joined the system on or after July 1, 1990, and has military service or Alaska BIA service, the member's indebtedness shall be determined under (a) of this section except that the percentage multiplier is 8.65 percent. Sec. 3, ch. 97, SLA 1990.

The effective date for both changes was July 1, 1990. *See* Sec. 18, ch. 97, SLA 1990. Historical context suggests that the 1990 revisions continued to require arrearage indebtedness for BIA service to be calculated using a percentage multiplier for members who began their Alaska BIA service before July 1, 1990. But, under AS 14.25.060(d), if the member who performed such service did not join *the TRS system* until on or after July 1, 1990, then the arrearage indebtedness for this Alaska BIA service is calculated using 8.65 percent, rather than 7.0 percent, as the base salary multiplier.

The Bartleys joined the TRS system after July 1, 1990 and had BIA service prior to 1990. Alaska Statute 14.25.060(d), enacted in 1990 before the Bartleys joined the TRS system, covers the Bartleys' situation with

respect to their BIA service. Because the Bartleys performed the BIA service before 1990 they are entitled to have their arrearage indebtedness for that service calculated using a percentage multiplier, rather than actuarial cost. But because they did not join the TRS system until after July 1, 1990, the correct multiplier is 8.65 percent. The Board did not err in approving the Division's calculations of the Bartleys' arrearage indebtedness for Alaska BIA service.

The Bartleys suggest that they were constitutionally entitled to a calculation using 7.0 percent as the multiplier because that rate was formerly available to all TRS members who had served in the BIA before 1975. But the right to accrued pension benefits, arising from article XII, section 7 of the Alaska Constitution, attaches upon enrollment in TRS. *See Flisock v. State, Division of Retirement & Benefits*, 818 P.2d 640, 643 (Alaska 1991). The Bartleys are thus constitutionally entitled to have their pension benefits calculated under the law in effect when they joined TRS in 1991, not the law that was in effect when they joined the Alaska BIA service in 1968.

2. *The Division properly calculated the Bartleys' arrearage indebtedness for non-BIA outside service under AS 14.25.060(b).*

The Bartleys also contend that the Division erred in calculating their arrearage indebtedness for their non-BIA outside service using the actuarial cost under AS 14.25.060(b). They contend that under AS 14.25.060(a) the Division was required to use the percentage multiplier method to calculate their arrearage indebtedness for all of their prior teaching service—not just the BIA service. They also contend that the Division's actuarial cost calculations were erroneous and that the Division erred by adding interest to their arrearage indebtedness for non-BIA outside service.

The Bartleys contend that subsection (a) of AS 14.25.060, which states that "the arrearage indebtedness is seven percent of the base salary multiplied by the total number of years of creditable outside, military and Alaska BIA service" demonstrates a legislative intent to require aggregation of *all* service claimed by a member—not just the BIA service. But the language of AS 14.25.060(a)(1) does not warrant such a construction. For members with BIA service predating July 1, 1990, only their BIA service constitutes "creditable service" within the meaning of AS 14.25.060(a)(1), or as applicable here, AS 14.24.060(d).

Arrearage indebtedness for non-BIA service for members who joined the TRS system on or after July 1, 1978 is established under AS 14.25.060(b), which reads:

If a member joins the system on or after July 1, 1978, and has creditable outside service, the member may claim this service. If claimed, the member is indebted to the system as follows:

(1) The arrearage indebtedness is the full actuarial cost of providing benefits for the service being claimed. Compound interest at the rate prescribed by regulation shall be added to the arrearage indebtedness beginning the date the actuarial cost is established to the date of payment or the date of retirement, whichever occurs first.

The Bartleys' arrearage indebtedness for non-BIA outside service should be calculated at full actuarial cost pursuant to this subsection. The Division had found the actual cost of crediting the Bartleys with their non-BIA outside service to be 20.034% of the average base salary plus interest. Substantial evidence in the record supports the Board's findings. The Division's calculations are consistent with AS 14.25.060(b) and do not, as the Bartleys contend, violate their constitutional rights to retirement benefits under the laws in effect when they joined TRS in 1991.[1] The agency properly calculated the Bartleys'

---

1. The Bartleys also contend that the Division violated their due process rights by failing to disclose the methods it used to determine the actuarial cost of their non-BIA outside service, but the Bartleys do not cite any legal authority in support of their argument and have therefore waived the issue. *Cf. Wernberg v. Matanuska Elec. Ass'n*, 494 P.2d 790, 794 (Alaska 1972).

arrearage indebtedness for non-BIA outside service.

### C. *The Bartleys are not eligible for normal retirement under AS 14.25.110.*

While the Bartleys were teaching for the District the legislature passed a retirement incentive program (RIP) that made three years of retirement credit available for a limited time to encourage eligible TRS members to retire. *See* Ch. 92, SLA 1997; ch. 65, SLA 1996. Participation in the RIP for teachers like the Bartleys was conditioned on their eligibility to retire under AS 14.25.110, which makes different retirement benefits available to TRS members depending on their ages and years of service. Under AS 14.25.110(a) normal retirement benefits are available to a TRS member who meets specified criteria. Under AS 14.25.110(b) lesser early retirement benefits are available to younger TRS members who satisfy certain of the criteria listed in AS 14.25.110(a).

The Bartleys assert that they qualified for normal retirement under 14.25.110(a)(1), which provides that normal retirement is available to a member who

> *was first hired before July 1, 1975,* has attained the age of 55 years, and has at least 15 years of credited service, the last five of which have been membership service or is otherwise vested in the system[.] (emphasis added)

#### 1. *Interpreting "first hired"*

On appeal to this court, the Bartleys insist that they were qualified for normal retirement under AS 14.25.110(a)(1) because they were first hired by the BIA before July 1, 1975. The Division and Board both interpreted AS 14.25.110(a)(1) as making normal retirement available only to those teachers first hired before July 1, 1975 *by a TRS employer.* To resolve this dispute, this court must interpret "first hired," the meaning of which is a question of law not involving agency expertise that the court answers using its independent judgment. *Cf. Flisock v. State, Division of Retirement and Benefits,* 818 P.2d 640, 642 (Alaska 1991).

#### a. *Prior statutory language*

In the 1960's there was no distinction between normal and early retirement; TRS members were eligible for retirement at age 55 if they had been in membership service for the prior five years and had a total of at least 10 years of membership service and 15 years of creditable service. *See* Sec. 4, ch. 86, SLA 1963 (amending AS 14.25.110). By 1973, normal retirement was available to 60–year–old teachers with 15 years of creditable service, the last five of which were membership service, but 55–year–old teachers with such records were only eligible for early retirement. *See* Sec. 8, ch. 66, SLA 1973 (repealing and reenacting AS 14.25.110). In 1974, the governing statute was modified to permit 60–year–old teachers with 8 years of membership service to retire normally, but there was no modification of the retirement requirements for 55–year–olds. *See* Sec. 2, ch. 57, SLA 1974 (amending AS 14.25.110(a)).

The distinction between teachers hired before and after July 1, 1975 originated in legislative changes adopted in 1975. Chapter 173 of the 1975 Session Laws changed AS 14.25.110(a) to read as follows:

> A teacher is eligible for normal retirement if he has completed either
> (1) at least 15 years of creditable service, the last five of which have been membership service, except that a member first hired after July 1, 1975 must have eight years of membership service, and has attained the age of 55 years . . .

*See* Sec. 1, ch. 173, SLA 1975. As a result of these changes, 55–year–old teachers with 15 years of creditable service hired after July 1, 1975 were required to have at least eight years of membership service—three more years of membership service than was required of teachers first hired before July 1, 1975.

The statute was again revised in 1980, but retained the requirement of eight years of membership service for normal retirement of 55–year–old teachers hired after July 1, 1975:

> A member is eligible for a normal retirement benefit if he
> (1) was first hired before July 1, 1975, has at least 15 years of credited service, the

last five of which have been membership service;

(2) has attained the age of 55 years and has at least eight years of membership service; [or]

(3) has attained the age of 55 years, has at least 5 years of membership service, and has at least three years of Alaska BIA service;

. . .

Sec. 14, ch. 13, SLA 1980. Although the permutations for BIA service shifted slightly during legislative changes in 1986, the lower membership service requirement for teachers first hired before July 1, 1975 endured. *See* Sec.1, ch. 177, SLA 1986 *and* Sec.1, ch. 81, SLA 1986.

When the minimum normal retirement age for teachers with eight years of membership service increased from 55 years to 60 years in 1990, the legislature retained the provision permitting teachers first hired before July 1, 1975 to retire at age 55 based on fifteen years of credited service, the last five of which were membership service. *See* Sec. 5, ch. 97, SLA 1990. A second bill passed in 1990 modified the requirements to AS 14.25.110(a)(1) to permit the normal retirement of 55–year–old teachers based either on fifteen years of credited service the last five of which were membership service or on being "otherwise vested in the system." *See* Sec. 1, ch. 79, SLA 1990.

    b.   *Interpreting the language in effect when the Bartleys worked for the District as active TRS members*

Since the 1990 revisions, Alaska Statute 14.25.110(a) has provided that

a member is eligible for a normal retirement benefit if the member

(1) was first hired before July 1, 1975, has attained the age of 55 years, and has at least 15 years of credited service, the last five of which have been membership service or is otherwise vested in the system[.]

The statutory language "first hired before July 1, 1975" thus preserves a historical distinction between teachers hired before and after the effective date of the 1975 legislative

revisions. The continued distinction makes sense because teachers who joined the TRS system before that date cannot constitutionally be made subject to subsequent increases in age and length of service requirements. *See Flisock v. State, Division of Retirement & Benefits,* 818 P.2d 640, 643 (Alaska 1991) (interpreting article XII, section 7 of the Alaska Constitution).

AS 14.25.110(a) specifies that "a *member* is eligible for a normal retirement benefit if the member (1) was first hired before [a certain date] and [satisfies certain service criteria]." The use of the word "member," and the historical and statutory context of AS 14.25.110(a)(1) suggest that the term "first hired" refers to when a member was first hired into the TRS system, and does not refer to the date on which a teacher may have been first hired into other creditable employment.

The Bartleys point to other statutes in which the legislature has been more explicit about which employment satisfies time-sensitive hiring requirements. But greater specificity in unrelated statutes does not prove that the legislature intended to interpret "first hired" in this statute to refer to the teacher being first hired into any creditable employment before July 1, 1975. And, contrary to the Bartleys' suggestion, there is no legal or equitable preference favoring a construction of "first hired" that would make normal retirement available to 55–year–old teachers who entered the TRS system toward the end of careers begun elsewhere before 1975. Comparison to other TRS members now eligible for normal retirement— such as those with 25 years of credited service or 20 years of membership service—does not demonstrate that the legislature intended to make TRS members with only 15 years of credited service, 5 in membership service, eligible for normal retirement benefits at age 55 simply because they were first hired into creditable service by a non-TRS employer before July 1, 1975.

The Bartleys, who did not become TRS members until they were hired by the District in 1991, were not entitled to a normal retirement benefit under AS 14.25.110(a)(1)

because they were not "first hired" into the TRS system before July 1, 1975.

### 2. *Otherwise vested*

Alaska Statute 14.25.110(a)(1) provides that normal retirement benefits are available to a member who

> was first hired before July 1, 1975, has attained the age of 55 years, and has at least 15 years of credited service, the last five of which have been membership service *or is otherwise vested in the system* [.] (emphasis added)

The Bartleys contend that they should qualify for normal retirement under AS 14.25.110(a)(1) because they must be "otherwise vested." They contend that they must have been vested because participation in the RIP was limited to vested TRS members. *See* Sec. 2, ch. 65, SLA 1996.

An active member of TRS is vested if the member has any of the following:

> (A) 15 years of service, the last five of which have been membership service, for a member first hired before July 1, 1975;
>
> (B) eight years of membership service;
>
> (C) five years of membership and three years of BIA service;
>
> (D) 12 school years of part-time membership service or 12 school years in each of which the member earned either part-time or full-time membership service.

AS 14.25.220(42). The Bartleys reason that since they were accepted into the RIP and they do not satisfy vesting criteria (B), (C), or (D), they must have been "first hired before July 1, 1975" under subsection (A) and therefore qualify for normal retirement benefits under AS 14.25.110(a)(1).

The Bartleys' argument is without merit. At the time of the Bartleys' retirement, AS 14.25.110 required that 55–year–old teachers have at least five years of TRS service and at least three years of BIA service to be entitled to early retirement. Since 2000, early retirement has been available to teachers with at least five years of membership service and Alaska BIA service, which when added to the membership service, will equal

at least eight years. *See* Sec. 7, ch. 68, SLA 2000. The Division may well have designated the Bartleys early retirees based on AS 14.25.110(b) and expansively interpreted former AS 14.25.110(a)(3) in the manner now codified in the 2000 amendment. The Division might also have generously interpreted vesting criteria (C), which is identical for former AS 14.25.110(a)(3), so as to allow the Bartleys to participate in the RIP based on their seven years of membership service and two years of BIA service. There is no indication that the Division considered the Bartleys to be vested based on having first been hired before July 1, 1975. And if the Division had done so, that error does not constrain this court's independent interpretation of the statutory prerequisites to normal retirement or the vesting criteria. Under a strict construction of the then-existing statute, the Bartleys did not satisfy any of the vesting criteria. Yet the issue is immaterial, because the Bartleys were accepted into the RIP program as early retirees, and received the substantial benefits of that program. The Division's favorable determination to the Bartleys in that regard is not on appeal. Irrespective of that determination, the Bartleys were not first hired by a TRS employer until 1991 and are not entitled to normal retirement benefits.

### 3. *Estoppel*

The Bartleys also contend that the Division should be equitably estopped from designating them as early retirees because it did not more clearly and promptly reject their requests for normal retirement. There are four elements to equitable estoppel: "(1) assertion of a position by conduct or word, (2) reasonable reliance thereon, . . . (3) resulting prejudice" and, when estoppel is claimed against the state, (4) a lack of significant prejudice to the public interest. *See Municipality of Anchorage v. Schneider,* 685 P.2d 94, 97 (Alaska 1984).

The Board noted that the Bartleys received a smaller benefit as early retirees than they would as normal retirees and that granting the Bartleys normal retirement would not significantly prejudice the public interest. But the Board found that when

communicating with the Bartleys before their retirement, the Division had never asserted that the Bartleys were entitled to normal retirement. Instead, the Board found that in its communications with the Bartleys, the Division had recited facts consistent only with early retirement benefits. The Board also found that the Bartleys had ignored the implications of the Division's communications. Ultimately, the Board rejected the Bartleys' estoppel claims because two of the elements—assertion of a position by the Division and reasonable reliance thereon by the Bartleys—were not present. There is substantial support in the record for the Board's findings with respect to whether the Division asserted a contrary position that the Bartleys reasonably relied upon.

In December 1997 the Division informed both Bartleys of their indebtedness for their claimed years of BIA service. In February 1998 the Division sent the Bartleys letters acknowledging receipt of their applications to participate in the RIP, stating that they would not be able to retire unless they fully paid their indebtedness for their claimed BIA service, and listing paperwork that the Bartleys still needed to file. The Division's letter expressly stated that the Bartleys' retirements were subject to their satisfaction of the statutory prerequisites to retirement. In March 1998 the Division sent the Bartleys a letter projecting the price of claimed outside service and asking for written confirmation that they desired to claim the service. The Bartleys wrote the Division requesting fewer years of outside service and suggesting that before recalculating their arrearage the Division should examine AS 14.25.060(d) and 14.25.060(a). In April 1998 the Division sent the Bartleys updated figures and clearly stated that it would calculate their indebtedness for their non-BIA outside service at actuarial cost under AS 14.25.060(b), rather than by using a percentage multiplier, because the Bartleys had not joined TRS until after July 1, 1990. In May 1998 the Division responded in writing to questions from the Bartleys regarding calculation of their arrearage indebtedness for outside service and clearly stated that both Bartleys would be considered early retirees.

The Bartleys note that the Division did not use the words "early retirement" in its prior letters and contend that by accepting their retirement applications the Division impliedly asserted that it would find them eligible for normal retirement. But, as Mr. Bartley conceded in his testimony before the Board, the Division had not told the Bartleys whether they would be early or normal retirees. The record contains substantial support for the Board's finding that the Division did not affirmatively assert that the Bartleys were entitled to normal retirement.

The Bartleys argue that the Division had a duty to more explicitly inform them that they would not be eligible for normal retirement and that they should not be expected to have divined that the Division would not accept their BIA service as the date for having first been hired for the purposes of AS 14.25.110. But, even if the Division might have more promptly and clearly asserted that the Bartleys were not entitled to normal retirement, the Bartleys' estoppel claim must fail because the record supports the Board's finding that the Bartleys did not actually rely on the Division's representations. As the Board observed in its decision, Mr. Bartley testified that the Bartleys' expectations of normal retirement were based on their own interpretation of legal materials, not on representations made by the Division. Mr. Bartley also testified that he understood early on that the Division interpreted the law differently than he did.

Because substantial evidence supports the Board's finding that the Bartleys did not actually rely on an assertion by the Division that they would be eligible for normal retirement, the Bartleys' claim of equitable estoppel is rejected.

### 4. *RIP credit*

RIP participants gain eligibility for three additional years of benefit, which are allocated as follows: (1) as years toward age or service requirements for normal retirement; (2) as years toward age and service requirements for early retirement; (3) as years reducing the actuarial adjustment for early

retirement; then (4) as years of credited service for calculating retirement benefits. Sec. 2, ch. 65, SLA 1996.

In the section of their brief protesting their denied eligibility for normal retirement, the Bartleys also assert that they were not properly granted the full benefit of the RIP program. They claim that the Division's March 19, 1998 letters demonstrate that they were not properly given RIP credit and that if the Division insisted on designating them as early retirees, it was required to consider them 58 years old instead of 55.

The Division contends that the RIP credit was correctly applied. Since the Bartleys were first hired into the TRS in 1991, normal retirement would not be available to them until age 60. And since the Bartleys were only 55, adding an additional three years would not render them eligible for normal retirement. But under the Division's generous reading of AS 14.25.110(a)(3), the Bartleys did not need any additional years of age or service to be eligible for early retirement. The Division therefore properly used the three RIP years to lessen the actuarial reduction that would otherwise have been required under AS 14.25.110(j).

That practice is in accordance with the priority system of the RIP.

## D. *Good faith and fair dealing*

The Bartleys contend that duties of good faith and fair dealing implicit in their contracts as public employees were breached by the Division in three ways: (1) interpreting the applicable statutes so as to diminish the Bartleys' retirement benefits; (2) overcharging the Bartleys for their claimed outside service; and (3) failing to properly account for their RIP credit. But, as discussed above, the Division calculated the Bartleys' retirement benefits in accordance with the statutes in effect when the Bartleys joined the TRS system. There has been no violation of the terms of the Bartleys' contracts as public employees.

## E. *Procedural validity of Division regulations*

Finally, the Bartleys ask this court to hold that the Division's policies and practices with regard to AS 14.25.060 are invalid because they violate statutory provisions governing the implementation of agency regulations, AS 14.25.022 and AS 44.62.030.

The Administrative Procedure Act provision that the Bartleys claim has been violated, AS 44.62.030, facially applies to the regulations promulgated by any state agency. But AS 14.25.022 expressly exempts regulations adopted by the Alaska Teachers' Retirement Board from the requirements of the Administrative Procedure Act. Because regulations adopted by the Teachers' Retirement Board are exempted by statute from the requirements of the Administrative Procedure Act, the Bartleys claim that the regulations related to AS 14.25.060 are void for violation of AS 44.62.030 must fail.

Alaska Statute 14.25.022 sets forth an alternative set of procedural requirements for regulations promulgated by the Teachers' Retirement Board, including publishing proposed regulations in the Alaska Administrative Register and Code. *See* AS 14.25.022(b). The Bartleys contend that the Division's practices for interpreting AS 14.25.060 violate AS 14.25.022(b) because they were not properly published. But even assuming that agency regulations related to AS 14.25.060 were not properly published, the Bartleys' benefits were properly calculated in accordance with the underlying statutes. Therefore, this court need not reach the validity of the interpretative regulations.

## CONCLUSION

The decision of the Teachers' Retirement Board is AFFIRMED.

Entered at Anchorage, Alaska this *25th* day of September 2001.

/s/ Sharon Gleason
SHARON L. GLEASON
Superior Court Judge