UNION OIL COMPANY OF CALIFOR-
NIA et al., Appellants,

v.

DEPARTMENT OF REVENUE of the
State of Alaska, Appellee.

MOBIL OIL CORPORATION, Appellant,

v.

DEPARTMENT OF REVENUE of the
State of Alaska, Appellee.

DEPARTMENT OF REVENUE of the
State of Alaska, Cross-Appellant,

v.

UNION OIL COMPANY OF CALIFOR-
NIA et al., Cross-Appellees.

Nos. 2699, 2700 and 2719.

Supreme Court of Alaska.

Feb. 16, 1977.

Ralph E. Duerre, Anchorage, for appellants and cross-appellees.

John R. Messenger, Asst. Atty. Gen. and Avrum M. Gross, Atty. Gen., Juneau, for appellee and cross-appellant.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BOOCHEVER, Chief Justice.

These consolidated cases raise issues concerning the meaning of a portion of the state's oil and gas properties' production tax law, AS 43.55.015(c), and the scope of appellate review of 15 AAC 05.694, a Department of Revenue regulation which interprets that statute.

---

In 1973, the state legislature amended the oil and gas production taxes,[1] and, in addition, provided a mechanism which adjusted the rates of the cents-per-barrel tax on oil to reflect changes in the national crude oil market.[2] AS 43.55.015(c) calibrates the tax rate on the basis of changes occurring in the Wholesale Price Index ("WPI") for crude petroleum published by the Bureau of Labor Statistics ("Bureau") of the United States Department of Labor. AS 43.55.-015(c) states:

> (c) The tax rates set out in this section will be increased or decreased by a percentage equal to the percentage of change in the Wholesale Price Index for crude petroleum published by the Bureau of Labor Statistics, of the United States Department of Labor. The year 1967 is the base year of 100 for computing the tax rates. *Changes in tax rates will be computed based on changes in the Wholesale Price Index occurring after January 1, 1974 and will not include changes in the Wholesale Price Index prior to January 1, 1974.* The department shall post the changes in the tax rates at least semi-annually and shall notify every person producing oil within the state of the changes. (emphasis added)

Each month the Bureau publishes the WPI which is determined by an analysis of domestic wholesale prices of crude petroleum. Price sampling to obtain data for calculation of the index occurs on a regularly established day of a given month. The data is compiled into an index number[3] which is reported and published the following month. Thus, the November 1973 WPI was

---

1. Sec. 2, Chapt. 4, FSSLA 1973.

2. Oil produced in Alaska is taxed by means of a gross production tax which consists of two alternative taxes—AS 43.55.010 based on a percentage of value of oil produced, and AS 43.55.015 which provides in part:

   *Tax per Barrel of Oil.* (a) There is levied upon the producer of oil a tax on each barrel of oil removed or sold from each lease or property in the state less any part the ownership or right to which is exempt from taxation. The tax is based upon the average daily production for each well for the calendar month in barrels determined according to

the following schedule and any part which is exempt from taxation is deducted from the tax levied on a pro rata basis as to each production level bracket:

   (1) $.16875 on each of the first 300 barrels;
   (2) $.2025 on each of the next 700 barrels;
   (3) $.2700 on each barrel of production in excess of 1,000 barrels.

   A taxpayer is required to pay the highest of the two alternate taxes. *See* AS 43.55.010(e).

3. The Index is not comprised of the actual prices but reflects the ratio of the current level of prices to the pricing level during the base period of 1967.

based on data collected on November 13, 1973 and was published on December 6, 1973. The December 1973 Index which reflected prices on December 11 was published on January 8, 1974. On February 15, 1974, the Bureau published the January 1974 Index which was based on price data collected on January 13, 1974.

Under the statute, the Department of Revenue is charged with the responsibility of posting changes in the tax rates which are generated by changes in the WPI. AS 43.55.015(c). By regulation, 15 AAC 05.694, the Department selected the December 1973 WPI, which was published on January 8, 1974, as the starting point for measuring, in the language of AS 43.55.015(c), "changes in the Wholesale Price Index occurring . . . after January 1, 1974 . . . ."[4]

█ At a hearing before the Department held in August of 1974, the oil companies argued that 15 AAC 05.694 was inconsistent with AS 43.55.015(c) and that the January WPI published on February 15, 1974 should be used. They sought a refund of taxes paid under protest. The Hearing Officer sustained the regulation, and the superior court affirmed, finding that the regulation was a "reasonable interpretation of what was intended by the legislature".[5] This appeal by the taxpayers and the cross-appeal by the Department followed.

**4.** 15 AAC 05.694 provides:
TAX RATE CHANGES BASED ON WHOLESALE PRICE INDEX. The Department of Revenue monthly will determine changes in tax rates based on percentage of change in the Wholesale Price Index for crude petroleum from that of December 1973. Changes in tax rates shall be posted by written notice to every person producing oil within the state. A change in tax rates shall be effective for oil produced during the calendar month following the month in which the written notice of change is dated.

**5.** That decision has no impact on this court's review. Where the superior court acts as an intermediate court of appeal, the supreme court will approach the issues independently. *Jager v. State,* 537 P.2d 1100, 1106 (Alaska 1975); *State v. Marathon Oil Co.,* 528 P.2d 293, 298 (Alaska 1974).

**6.** Thus, we have applied the reasonable basis test to review questions of oil discovery evalua-

**I**

█ We first must ascertain the appropriate scope of review to apply. The oil companies argue that the issue in this case is one of pure statutory construction which is within the special competency of the courts. Therefore, they urge that this court is not bound by the Department interpretation of AS 43.55.015(c) and should independently consider the meaning of the statute. We agree with this contention.

In recent decisions, we have distinguished between two types of questions which may confront a court in judicial review of administrative action. Where the agency decision involves the formulation of fundamental policy or the particularized expertise and experience of administrative personnel, this court will defer to the administrative decision,[6] inquiring only whether it has a reasonable basis. *State v. Aleut Corporation,* 541 P.2d 730, 736–37 (Alaska 1975). On the other hand, where, as here, the issues to be resolved turn on statutory interpretation,[7] the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute. Statutory interpretation is within the scope of the court's special competency, and it is our duty to consider the statute independently. *State v. Aleut Corporation, supra* at 736–37.

tion and prediction of future well productivity, *Pan American Petroleum Corp. v. Shell Oil Co.,* 455 P.2d 12, 20–22 (Alaska 1969); procedures adopted for competitive bidding for oil and gas leases, *Swindel v. Kelly,* 499 P.2d 291, 298–99 (Alaska 1972); criteria for qualified applicants for such leases, *Kelly v. Zamarello,* 486 P.2d 906, 916–17 (Alaska 1971); decisions regarding initiation of a rate investigation pursuant to charges of discrimination, *Jager v. State,* 537 P.2d 1100, 1106 (Alaska 1975); and conclusions relating to the desirability of creating a borough, *Mobil Oil Corp. v. Local Boundary Commission,* 518 P.2d 92, 97–98 (Alaska 1974).

**7.** *See State v. Aleut Corporation, supra* at 736–37 (interpretation of statute relating to public land auction procedures); *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.,* 516 P.2d 408, 411–13 (Alaska 1973) (determination whether administrative procedures consistent with due process).

**24**

■ In support of a reasonable basis standard of review, the Department argues that its interpretation made " . . . all the complicated variables of the tax calculation fit together in an efficient and workable manner . . ." and was based upon " . ·. . the department's expertise in administering tax calculations, taxpayer notifications and payment procedures". Additionally, the choice of the December Index was a matter of policy: it bore a logical nexus to the new tax year and appeared to be fair to the taxpayers.

■ These considerations do not warrant application of the reasonable basis test. While tax structure and collection procedures do involve certain policy considerations which we consider in independently interpreting this statute, none of the policy judgments argued in this case is the type of specialized agency judgment which has caused us to apply the reasonable basis test in the past. The Department does not suggest any detriment to the over-all tax collection scheme or interference with the functioning of the Department which might result if its interpretation were not upheld.[8] We proceed independently to consider the meaning of AS 43.55.015(c).

## II

■ The taxpayers argue that the plain meaning of the third sentence of subsection (c) requires the use of the January 1974 Index, published in February of that year, as the basis for computing subsequent changes in tax rates. We reject this argument and hold that the proper starting point is the December Index.

In essence, the oil companies read: "will not include changes in the Wholesale Price Index prior to January 1, 1974" to mean that price movements which occurred before January must be disregarded even though they are reflected in WPIs in effect after January 1, 1974. This is not the "plain meaning" of that language. The words of the statute refer to the published WPI itself and not to its underlying data. There is no authority in subsection (c) to look behind the Index itself to the month in which the data was collected.[9]

In their cross-appeal, the Department suggests that independent review of the statute yields the conclusion that the November Index is the proper starting point from which to compute subsequent changes in tax rates. The November Index was published on December 6, 1973, and it is argued that a change occurred after January 1, 1974 when the December Index was published on January 8, 1974. While we agree that this interpretation is a permissible reading of the statute, we find that the language of AS 43.55.015(c) is also susceptible of another meaning. By reading the word "prior" in the phrase "will not include changes in the Wholesale Price Index prior to January 1, 1974" to modify both "changes" and "Index", we could conclude that no Index in effect prior to the effective date of the statute may be used as the initial Index. Under this interpretation, the proper construction of the statute was given to it by the Department in 15 AAC 05.694. This interpretation indicates that the first critical change occurring after January 1, 1974 was the change between the Index published on January 8, 1974 (the

---

**8.** *Cf., Kelly v. Zamarello, supra* at 917, where the administrative decision had " . . . application beyond the instant case, going to the integrity of the entire competitive bidding process".

**9.** The taxpayers draw our attention to various affidavits made after the statute in question was passed in an attempt to clarify the meaning of the statute. Even if we were to give any weight to the legislative history cited by the taxpayers, we do not find that the statements of Mr. Bryant or Mr. Hartig either clarify the

meaning of subsection (c) or reflect a legislative intent to rely on the January Index.

In *Alaska Public Employees Association v. State,* 525 P.2d 12, 16 (Alaska 1974), we indicated that we did not wish to "transform statutory construction into a parade of legislators' affidavits containing their perceptions of the meaning of a bill". Statements made after passage of a bill as to what matters were given weight by the legislature cannot be given consideration. *Lynden Transport Inc. v. State,* 532 P.2d 700, 716 (Alaska 1975).

December Index) and the one published on February 15 (the January Index).

 For two reasons, we accept this latter interpretation. First, the statute is ambiguous, and we may therefore give some weight to the administrative decision even when exercising our independent review.[10] Secondly, we follow the general rule of construction of tax statutes which requires that, where possible, doubts be resolved in favor of the taxpayer.[11] We therefore hold that the decision of the superior court which upholds the decision of the hearing officer, is

AFFIRMED.[12]

---

10. *Kelly v. Zamarello, supra* at 909 n.14; *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944). *See generally* Vol. 1, Davis, Administrative Law Treatise § 5.05, pages 314–24. While we do not agree with the Department's argument that considerations of procedural ease and efficiency in administration of the new tax provisions justify application of the reasonable basis test, we do think that those factors justify some deference to the Department's regulation.

11. 3 Sands, Sutherland Statutory Construction §§ 66.01.02, pages 179–88 (4th Ed. 1974).

12. The taxpayers challenge the state's right to bring this cross-appeal, arguing that it cannot ask the court to reverse its own administrative decision. The state suggested the use of the November Index throughout the proceedings below, but it never specifically sought a ruling on this argument. The superior court nevertheless found that for the first seven days of January, there was no Index upon which a base could be established, thereby rejecting the state's suggestion. It is from this finding that the state has appealed. In view of our decision to uphold the Department's interpretation, we need not pass on the propriety of the cross-appeal in this case.