698 So.2d 1294 (1997)
Curtis WILLIAMS and Quintin Holt, Sr., Appellants,
v.
Ken ERGLE, Sheriff and Hugh Kelly, Mayor, Appellees.
No. 96-2739.
District Court of Appeal of Florida, Fifth District.
August 22, 1997.
Curtis Williams and Quintin Holt, Sr., Ocala, pro se.
Loren E. Levy, The Levy Law Firm, Tallahassee, and Carol A. Falvey of Green, Kaster & Falvey, P.A., Ocala, for Appellees.
GRIFFIN, Chief Judge.
Pro se appellants Curtis Williams and Quintin Holt appeal the circuit court's denial of their petition for writ of prohibition against the Sheriff of Marion County and the Mayor of Ocala. At the time they filed their petition, they were non-sentenced, pre-trial detainees incarcerated in the Marion County Jail. Appellants were being charged by appellees for medical and dental treatment they received and one dollar per day for meal *1295 costs. Their inmate bank accounts, into which monies had been deposited by friends and family members for the purchase of personal items, were being debited to meet these charges. Appellants claimed that no statute authorized these charges and that their right, under Article I, Section 19 of the Florida Constitution, to be free from costs prior to conviction was being violated. The lower court denied the petition. We affirm.[1]
Although pre-trial detainees are generally entitled under the constitution to reasonable and adequate nourishment and medical care, see Hamm v. DeKalb County, 774 F.2d 1567, 1573 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), it does not follow that prison officials or the taxpayers are required to pay for them. In City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244-45, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983), the United States Supreme Court stated:
[A]s long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.
* * * * * *
In short, the injured detainee's constitutional right is to receive the needed medical treatment; how the city of Revere obtains such treatment is not a federal constitutional question.
In a footnote, the Court added, "Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him." 463 U.S. at 245, n. 7, 103 S.Ct. at 2984, n. 7. Indeed, a Florida court has since held that prisons are not required to pay for a non-indigent inmate's health care. See Metropolitan Dade County v. P.L. Dodge Foundations, Inc., 509 So.2d 1170, 1173-74 (Fla. 3d DCA 1987); see also Op. Att'y Gen. Fla. 59-158 (1959) (opining that cities are required to furnish and pay for medical care for indigent prisoners, but "[p]risoners who are able to provide necessary medical care for themselves from their private resources should do so if the need for such care does not flow from any negligent act on the part of the city which would subject the city to a tort action...."). This view is consistent with the notion that the provision of services to those who occupy America's prisons should not come solely at the expense of taxpayers when the occupants themselves possess resources to cover such costs. See S.P. Conboy, Note, Prison Reimbursement Statutes: The Trend Toward Requiring Inmates to Pay Their Own Way, 44 Drake L.Rev. 325 (1996); Wesley P. Shields, Comment, Prisoner Health Care: Is It Proper to Charge Inmates for Health Services?, 32 Hous. L.Rev. 271 (1995); see generally George L. Blum, Annotation, Validity, Construction, and Application of State Statute Requiring Inmate to Reimburse Government for Expense of Incarceration, 13 A.L.R. 5th 872 (1993).
It does appear that the challenged assessments have been authorized by the legislature. Section 951.032, Florida Statutes (1995), allows county and municipal detention facilities to recoup certain medical expenses from prisoners. The term "prisoner" is not defined in the statute, nor is there a definition applicable to the whole of chapter 951. Section 951.23, however, which provides a series of administrative requirements for county and municipal detention facilities, separately defines both "county prisoner" and "municipal prisoner." Under that statute, a "county prisoner" is defined as:
a person who is detained in a county detention facility by reason of being charged with or convicted of either [a] felony or misdemeanor.
§ 951.23(1)(c), Fla. Stat. (1995) (emphasis added). Similarly, a "municipal prisoner" is:
a person who is detained in a municipal detention facility by reason of being *1296 charged with or convicted of violation of [a] municipal law or ordinance.
§ 951.23(1)(e), Fla. Stat. (1995) (emphasis added). Thus, under section 951.23, pre-trial detainees in county or municipal detention facilities are considered "prisoners." Elsewhere in chapter 951, the legislature makes distinct reference simply to "prisoners" or prisoners "under sentence." Section 951.05 allows county boards to require "all county prisoners under sentence" to labor upon the public roads. § 951.05, Fla. Stat. (1995). See also §§ 951.01, .12, (Fla.Stat.). By comparison, section 951.06, Florida Statutes (1995), simply empowers chief correctional officers to enforce discipline among "prisoners," which could hardly be said to refer only to prisoners serving sentences.
Finally, it is a fundamental tenet of statutory construction that statutory language should be given its plain and ordinary meaning. WFTV, Inc. v. Wilken, 675 So.2d 674, 677 (Fla. 4th DCA 1996). When necessary, this may be ascertained by reference to a dictionary. Id. The plain meaning of the word "prisoner" is "a person held in custody, captivity, or a condition of forcible restraint, esp[ecially] while on trial or serving a prison sentence." The American Heritage Dictionary 986 (2d coll. ed.1991) (emphasis added). Thus, it appears that section 951.032's reference to prisoners includes both pre-trial detainees and those serving sentences following convictions.
The legislation authorizing assessment for the subsistence costs reimbursement was a product of the 1996 legislative session. § 951.033, Fla. Stat. (Supp.1996).[2] As with section 951.032, the term "prisoner" is not defined in this statute but the same reasoning suggests that pretrial detainees are included. Additionally, subsection (4) of section 951.033 provides that an order directing payment of a prisoner's daily subsistence costs may survive against the estate of the sentenced prisoner. It cannot be assumed that the word "sentenced" is superfluous. General Elec. v. DeCubas, 504 So.2d 1276, 1278 (Fla. 1st DCA 1986); Terrinoni v. Westward Ho!, 418 So.2d 1143, 1146 (Fla. 1st DCA 1982). The word "sentenced" appears nowhere else in the statute, which suggests that in this provision the legislature consciously distinguished between prisoners who are serving sentences for criminal convictions and those who are not. This choice of words can be explained by reference to section 939.06, Florida Statutes, which provides a defendant who is acquitted or discharged is *1297 not liable for subsistence charges while detained in custody. Had the legislature not restricted the provision regarding the viability of subsistence charges against prisoners' estates to sentenced prisoners only, the estates of persons who died prior to being convicted would be responsible for the subsistence costs of their detention, contrary to the long-standing expressed policy of section 939.06. Based on all of the foregoing, we conclude that the term "prisoner," as it used in section 951.033, includes pre-trial detainees.[3]
Appellants next assert that these assessments against pretrial detainees violate Article I, Section 19, of the Florida Constitution, which states:
No person charged with crime shall be compelled to pay costs before a judgment of conviction has become final.
Art. I, § 19, Fla. Const. (1968). Appellees urge that subsistence and health care costs provided to incarcerated pretrial detainees are not embraced within this constitutional prohibition. We think this is correct.
Article I, Section 19, was originally created as section 14 of the Declaration of Rights in the Constitution of 1885. T. D'Alemberte, Commentary, 25A Fla. Stat. Ann. 478 (1991). That section stated:
No person shall be compelled to pay costs except after conviction, on a final trial.
Decl. of Rights, § 14, Fla. Const. (1885). Despite the fact that the substance of this provision, to be referred to as the criminal costs provision, has existed within this state's organic law for over 110 years, there is practically no case law interpreting what is meant by the term "costs."[4]
In order to determine whether the criminal costs provision in Article I, Section 19 of the constitution applies to medical care and subsistence during pretrial detention, it is important to be cognizant of section 939.06, Florida Statutes. Since 1846, this statute has read, with only minor revisions:
No defendant in a criminal prosecution who is acquitted or discharged shall be liable for any costs or fees of the court or any ministerial office, or for any charge of subsistence while detained in custody. If he shall have paid any taxable costs in the case, the clerk or judge shall give him a certificate of the payment of such costs, with the items thereof, which, when audited and approved according to law, shall be refunded to him by the county.
(Emphasis added.) The Supreme Court of Florida, in recent decisions, has twice made clear that the "taxable costs" reference found in section 939.06's second sentence is linked to the liability exemption found in the first sentence:
Given its plain meaning, the relevant portion of this statute simply says: No acquitted criminal defendant shall be liable for any court costs or court fees, any costs or fees of a ministerial government office, or any charges for subsistence, and that if such a defendant has paid any of these taxable costs he or she shall be reimbursed by the county. On its face, the statute does not authorize an acquitted defendant to be reimbursed for any additional disbursements. We hold that investigative costs are not taxable costs under the plain language of the statute.
Board of County Commissioners, Pinellas County v. Sawyer, 620 So.2d 757, 758 (Fla. 1993)[5]; Wolf v. County of Volusia, 22 Fla. L. *1298 Weekly S192, ___ So.2d ___, 1997 WL 182884 (Fla. Apr. 17, 1997). Thus, it appears clear from section 939.06 that for 150 years, Florida law has contemplated that before conviction a prisoner might have to pay fees of the court or of a ministerial office as well as charges for subsistence. Under the legislative scheme, if the defendant is acquitted or discharged, he is entitled to have these costs or fees reimbursed. Because this legislation was in place long before the constitutional provisions at issue, and remains unaltered, it seems logical to deem that they have always been considered to work in harmony. This being so, it is unlikely that the reference to costs in Article I, Section 19 is a reference to the same such costs as are covered by section 939.06 and .07.
Three years after the 1885 constitution became effective, the supreme court heard a constitutional challenge to a statute which seemed to require an acquitted but solvent defendant to take an oath of insolvency in order to recover witness fees. Buckman v. Alexander, 24 Fla. 46, 3 So. 817 (1888). In concluding that the statute did not so require, the court addressed three new provisions of the 1885 constitutionsection 11 of the Declaration of Rights, which provided that criminal defendants shall have compulsory process for the attendance of witnesses in their favor; the criminal costs provision; and Article XVI, Section 9, which provided:
In all criminal cases prosecuted in the name of the State, where the defendant is insolvent or discharged, the State shall pay the legal costs and expenses, including the fees of officers, under such regulations as shall be prescribed by law.
Art. XVI, § 9, Fla. Const. (1885).[6] Construing the combined effect of these new provisions, the supreme court observed:
Then, taking these clauses of the constitution together, we think it clear that the accused, whether solvent or insolvent, is entitled to have process for his witnesses, and to have the same served, without payment of the fees of officers; that, if insolvent or discharged, the state shall pay the costs of the prosecution under regulations prescribed by law; and that, if solvent, he cannot be made to pay costs until conviction on final trial, having none to pay if discharged.
Buckman, 24 Fla. at 50, 3 So. at 818. The court in Buckman further held that the "legal costs and expenses" mentioned in Article XVI, Section 9, include not only the costs of the state but the costs of the defendant. Buckman, 24 Fla. at 46, 3 So. at 820.
The supreme court's brief interpretation suggests that the framework of the 1885 constitution encompassed the sorts of costs which can be characterized as "costs of the prosecution," which includes costs incurred by the state to further its prosecution or resulting from the prosecution, and costs paid by the accused to defend the state's prosecution. Prisoner subsistence and health care charges are not within these categories. In sum, we conclude that it is not forbidden by the state constitution to require reimbursement of health care or subsistence costs from prisoners who receive the services prior to their conviction. Article 1, Section 19 only prohibits the pre-conviction assessment of costs of the prosecution.
AFFIRMED.
COBB and W. SHARP, JJ., concur.
NOTES
[1] As a preliminary matter, the appellees argue that the appealed order should be affirmed because the appellants requested an improper form of relief. Because the essential issue raised by the petition is whether petitioners have a constitutional right to be free from paying the meal and health care charges that they are being charged prior to their convictions, we elect to consider the merits.
[2] The statute provides:

951.033. Income and assets; payment of subsistence costs.
(1) The Legislature finds that there is an urgent need to alleviate the increasing financial burdens on local subdivisions of the state caused by the expenses of incarcerating prisoners. In addition to a prisoner's cash account on deposit in local detention facilities, many prisoners have sources of income and assets outside of the facility, which may include bank accounts, inheritances, real estate, social security payments, veteran's payments, and other types of financial resources.
(2) The local detention facility shall determine the financial status of prisoners for the purpose of paying from their income and assets all or a fair portion of their daily subsistence costs. In determining the financial status of prisoners, any income exempt by state or federal law shall be excluded. Consideration shall be given to the prisoner's ability to pay, the liability or potential liability of the prisoner to the victim or guardian or the estate of the victim, and his or her dependents.
(3) The chief correctional officer of a local subdivision may direct a prisoner to pay for all or a fair portion of daily subsistence costs. A prisoner is entitled to reasonable advance notice of the assessment and shall be afforded an opportunity to present reasons for opposition to the assessment.
(4) An order from the chief correctional officer directing payment of all or a fair portion of a prisoner's daily subsistence costs may survive against the estate of the sentenced prisoner.
(5) The chief correctional officer may seek payment for the prisoner's subsistence costs from:
(a) The prisoner's cash account on deposit at the facility; or
(b) A civil restitution lien on the prisoner's cash account on deposit at the facility or on other personal property.
(6) If the prisoner's cash account at the local detention facility does not contain sufficient funds to cover subsistence costs, the chief correctional officer may place a civil restitution lien against the prisoner's cash account or other personal property. A civil restitution lien may continue for a period of 3 years and applies to the cash account of any prisoner who is reincarcerated within the county in which the civil restitution lien was originated.
§ 951.033, Fla. Stat. (Supp.1996).
[3] On appeal, appellants challenge that, contrary to the requirements of section 951.033, they were not notified or given the opportunity to contest the charges prior to the deduction of the charges from their prison accounts. This claim may have merit, but it was not raised in the petition filed in the circuit court. It will not be addressed for the first time on appeal.
[4] Only two Florida cases have directly construed the criminal costs provision and neither dealt with the meaning of the term "costs." DePaulis v. Judges of the District Court of Appeal, Fourth District, 373 So.2d 663, 665 (Fla.1979); State v. Newman, 24 Fla. 33, 3 So. 467 (1888). Both concerned a convicted defendant's attempt to circumvent a requirement that he pay the cost of a transcript necessary for his appeal. Both held that appellate proceedings remain outside the scope of the criminal costs provision. DePaulis, 373 So.2d at 665.
[5] Surprisingly, the Sawyer opinion indicates that Sawyer was discharged, not acquitted, yet the court did not address section 939.07, which purports to provide for recovery of certain costs for discharged defendants or Article XVI, Section 9, of the constitution of 1885. This latter provision appears to retain the dignity of a statute pursuant to Article XII, Section 10 of the constitution of 1968. Hamilton County v. State, 478 So.2d 394, 395 & n. 1 (Fla. 1st DCA 1985). Perhaps it was not raised by the parties.
[6] An 1894 amendment to the 1885 constitution rewrote this provision as follows:

In all criminal cases prosecuted in the name of the State when the defendant is insolvent or discharged, the legal costs and expenses, including the fees of officers, shall be paid by the counties where the crime is committed, under such regulations as shall be prescribed by law; and all fines and forfeitures collected under the penal laws of the State shall be paid into the County Treasuries of the respective counties as a general county fund to be applied to such legal costs and expenses.
S.J.R. 1, 1893, adopted 1894.