**ALASKA PUBLIC OFFICES COMMISSION,**
Appellant,

v.

**Ben STEVENS, Appellee.**

No. S–13016.

Supreme Court of Alaska.

April 17, 2009.

---

Margaret A. Paton Walsh, Assistant Attorney General, Anchorage, Talis Colberg, Attorney General, Juneau, for Appellant.

James E. Torgerson, Andrew F. Behrend, Heller Ehrman LLP, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

The Alaska Public Offices Commission (APOC) imposed a civil penalty against Alaska State Senator Ben Stevens for failing to report certain income on his 2006 Legislative Financial Disclosure Statement (LFD) for calendar year 2005. Stevens appealed to the superior court, which reversed APOC's decision. APOC now appeals the superior court's decision. Because APOC's reporting requirements were ambiguous and must be strictly construed in favor of Stevens, we affirm the superior court's decision that APOC may not impose a civil penalty against Stevens.

## II. FACTS AND PROCEEDINGS

SEMCO Energy, Inc. owns Enstar Natural Gas Company, which provides natural gas to the Municipality of Anchorage and to the Matanuska–Susitna Borough. In December 2004 SEMCO's board of directors elected Alaska State Senator Ben Stevens to fill a vacancy on that board beginning in January 2005. At a May 2005 SEMCO shareholder meeting Stevens was elected to a two-year term on the board.

When Stevens joined the SEMCO board he chose to defer his 2005 director compensation and have it invested in SEMCO common stock for distribution to him over a three-year period after the end of his directorship. Stevens's 2005 director compensation was $37,000 plus shares of SEMCO common stock worth a similar amount.

The SEMCO Deferred Compensation and Stock Purchase Agreement for Non–Employee Directors (Agreement) provided that SEMCO would "establish a bookkeeping account ... to evidence the Company's liability to the Director." The Agreement stated that: (1) the decision to defer income was irrevocable; (2) assets allocated to pay Stevens's compensation would "always be subject to claims of [SEMCO]'s general creditors and be available for [SEMCO]'s unfettered use"; (3) Stevens would have "no property interest in [SEMCO] assets whether or not earmarked to make payments pursuant to this Agreement"; and (4) neither Stevens nor his beneficiaries would have "any right to transfer or encumber any right to receive any payment." Finally the Agreement stated its purpose "to accomplish the deferral of the incidence of federal income tax ... until such time as [Stevens] ... actually receives payment."

Consistent with the terms of the Agreement, Stevens did not actually receive in hand any director compensation in 2005, and SEMCO did not issue Stevens any IRS forms for 2005 reportable income. On his 2006 LFD form for 2005 financial information, Stevens disclosed his positions as director and shareholder of SEMCO on Schedule B, Business Interests. He did not list SEMCO on Schedule A, Sources of Income Over $5,000.

In April 2006 APOC received a complaint alleging that Stevens had violated AS 24.60.200[1] and AS 39.50.030[2] by failing to disclose 2005 income from SEMCO. APOC sent Stevens a copy of the complaint on May 1, 2006, and opened an investigation. Two days later APOC mailed Stevens an LFD amendment form, explaining that if he had been paid by SEMCO in 2005 he was obligated to report the income on his 2006 LFD. Stevens was instructed to return the amendment form within fifteen days to avoid a penalty of ten dollars per day.

Stevens filled out the amendment form and returned it to APOC by fax exactly fifteen days later, on May 18, 2006. The form contained designated spaces only for "Recipient" and "Name of Source"; Stevens listed himself as the recipient and SEMCO as the source. The form did not contain a designated or otherwise obvious place to disclose the amount of income received; Stevens did not provide any information about his deferred compensation arrangement. APOC staff did not notify Stevens that his amended LFD form was considered in any way insufficient to satisfy the reporting requirements.

On November 13, 2006, in anticipation of APOC's hearing on the complaint, Stevens sent APOC a letter explaining why he had not originally listed SEMCO as a source of 2005 income:

> For calendar year 2005, I *received* no income from SEMCO.... *[P]ayments from the Graduated payout plan I selected begin 30 days after my termination* as a Member of the Board of Directors of SEMCO.... I have received no income from my 2005 compensation. The LFD form nor [sic] the LFD Instruction Manuel [sic] do not mention the reporting requirements for a deferred compensation plan. (Emphasis in original.)

APOC held a hearing on January 11, 2007. Stevens chose not to participate, relying on his November 2006 letter to explain his position. The hearing established APOC staff's belief that Stevens had failed to report SEMCO income for 2005. APOC staff recommended a civil penalty of ten dollars per day beginning the day Stevens's LFD was due (March 15) and ending the day he filed his amended LFD (May 18). APOC staff believed that a penalty assessed for the time after Stevens filed his amended LFD would be unfair because, although his amended LFD did not provide "an actual dollar figure," Stevens's compensation arrangement with SEMCO had been widely reported in the media. The recommended penalty period was comprised of sixty-three days, leading to a recommended penalty of $630.

APOC's commissioners voted to accept the staff recommendations for both the violation and the penalty. They also voted to notify Stevens that his penalty could be increased if he did not provide written disclosure of the amount of 2005 income he had received from SEMCO. APOC issued a two-page order on March 30, 2007, echoing the oral decision.

A factual finding in the APOC order detailed Stevens's SEMCO compensation:

> In May 2005, SEMCO Energy increased board member compensation from $12,000 per year and $1,000 per meeting to $35,000 per year plus 7,000 shares of stock (valued at $38,605). Senator Stevens was also entitled to $2,000 per year for serving on the Board's Budget and Audit Committee. The revised compensation plan was retroactive for the entire 2005 calendar year.

A separate finding of fact acknowledged: "Upon joining the SEMCO Energy Board, Senator Stevens opted to defer all compensation and stocks."

The APOC order concluded that because "Stevens received [in 2005] the unqualified

---

1. The version of AS 24.60.200 governing Stevens's reporting of 2005 income required legislators to report "income in excess of $5,000 received as compensation for personal services," and directed that the amount of income should be disclosed if the source "is known or reasonably should be known to have a substantial interest in legislative, administrative, or political action." AS 24.60.200(a)(2) (2006). There does not appear to be a dispute that SEMCO was within the class of income sources contemplated by the statute.

2. The version of AS 39.50.030 governing Stevens's financial disclosure required public officials to make "an accurate representation of the [official's] financial affairs," including "the source of all income over $5,000 ... received by the person." AS 39.50.030(a)-(b)(1) (2006).

right to payment of compensation and stock, etc., valued over $5,000 at a future date, he received an asset having substantial value during the reporting period that he was obligated to report," and that by failing to report the receipt of that asset, Stevens had violated AS 24.60.200 and AS 39.50.030.

Stevens sought judicial review of APOC's order. In January 2008 the superior court reversed APOC's order, holding that Stevens's failure to disclose his deferred compensation was not a statutory violation.

APOC appeals.

## II. STANDARD OF REVIEW

■■■ "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits" of the agency's decision without giving deference to the superior court's decision.[3] When reviewing an agency decision involving statutory interpretation and determination of legislative intent, we apply the substitution of judgment standard.[4]

## III. DISCUSSION

APOC's interpretation of the relevant statutes and regulations is reasonable, but diffi-

cult to ascertain from the instruction manual provided as guidance for filing 2006 LFDs.[5] Under "Definitions of Frequently Used Terms," income was defined as "money or anything of value received," but there was no instruction that "anything of value" covered both tangible and intangible items.[6] The text of relevant statutes was set out in an appendix, and although "anything of value" was defined for the purposes of AS 24.60 as including "all matters, whether tangible or intangible,"[7] the definition of "income" in that section did not include the phrase "anything of value."[8] This section of the manual instead defined "income" as "assets that are received," but neither "assets" nor "received" was defined.[9]

We thus look outside APOC's instruction manual.[10] Black's Law Dictionary defines "asset" as "[a]n item that is owned and has value."[11] Webster's Dictionary similarly defines "asset" as "an item of value owned."[12] As APOC staff reasoned, Stevens's contractual right to deferred compensation became a valuable asset when he performed the services in 2005 that entitled him to be paid later.[13] He received that asset in 2005 when, by performing compensable services, the right to deferred compensation took on sig-

**3.** *Alyeska Pipeline Serv. Co. v. DeShong,* 77 P.3d 1227, 1231 (Alaska 2003).

**4.** *See Alyeska Pipeline Serv. Co. v. State, Dep't of Envt'l Conservation,* 145 P.3d 561, 564 (Alaska 2006) (citing *State v. Dupier,* 118 P.3d 1039, 1044 (Alaska 2005)).

**5.** Alaska Public Offices Commission, Instruction Manual. Legislative Financial Disclosure AS 24.60.200–24.60.260 (January 2006).

**6.** *Id.* at ii.

**7.** *Id.* at A–5 (quoting AS 24.60.990(a)(2)).

**8.** *Id.* (quoting AS 24.60.990(a)(7)).

**9.** *Id.*

**10.** *See* AS 01.10.040(a) ("Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage."). APOC's instruction manual does not reference this statute.

**11.** Black's Law Dictionary 125 (8th ed. 2004).

**12.** Webster's Third New International Dictionary 131 (2002).

**13.** This would be consistent with how courts have treated deferred compensation plans in divorce proceedings. Many jurisdictions view these plans as marital assets to the extent the right to deferred compensation was earned with marital labor, i.e., accrued during the marriage. *See, e.g., Parry v. Parry,* 933 So.2d 9, 13 (Fla.App. 2006) ("[A]n award that is in the nature of deferred compensation and that is granted during the marriage is usually a marital asset because it is compensation for past marital labor."); *Coffman v. Coffman,* 215 S.W.3d 309, 312 (Mo.App. 2007) (holding that portion of benefits received by husband after he reached sixty-five years of age were intended as deferred compensation and were consequently marital asset); *Gardner v. Gardner,* 748 P.2d 1076, 1078–79 (Utah 1988) ("A right to deferred compensation acquired during marriage, or that portion of one's right to deferred compensation acquired during marriage, should not be entirely ignored in dividing assets, irrespective of when the vested funds are payable.").

nificant monetary value. That asset was therefore "income" as defined in AS 24.60.990, which then treated all "assets that are received" as subject to the disclosure requirements of former AS 24.60.200. APOC staff did not necessarily err in concluding that this was an asset subject to disclosure as "income."

On the other hand APOC offers no evidence that it had ever made its interpretation explicit prior to the due date of the 2006 LFD, and the instruction manual contained no instructions or examples for reporting deferred income or other expectation of future income.[14] Although Stevens was required to report income items in excess of $5,000 received in 2005, "received" was not defined in the instruction manual by any reference to a statute or regulation. Webster's Dictionary defines "receive" to mean "take possession or delivery of," "come into possession of," or "acquire."[15] Because "received" is in the past tense, the requirement of reporting income "received" could be read as applying only to income already possessed or acquired, not to income deferred into the future. Given the language of the SEMCO Agreement and the APOC instruction manual, Stevens could reasonably have believed that his deferred income did not need to be reported until distributed and actually "received" in hand for his unfettered use.

In 2007 two of the reporting-requirements statutes were amended to specifically address deferred compensation. Alaska Statute 24.60.200 was amended to require reporting of "income *or deferred income* in excess of $1,000 earned or received as compensation." (Emphasis added.) Alaska Statute 24.60.990(a)(7) was amended to include income that one receives "*or expects to receive.*" (Emphasis added.) The 2007 amendments undisputedly make deferred compensation subject to mandatory disclosure.[16]

Stevens contends that these statutory changes indicate a material change in the previously unambiguous 2006 reporting requirements.[17] APOC contends that the statutory changes were a mere endorsement of its interpretation of the existing 2006 reporting requirements.[18] Even if APOC is correct, the need for legislative clarification supports the notion that the 2006 reporting requirements were indefinite and ambiguous and could be read as either Stevens or APOC advocates.

■ In light of the foregoing, we conclude that the 2006 LFD reporting requirements were ambiguous with respect to reporting deferrals of 2005 income.

In *VECO International, Inc. v. Alaska Public Offices Commission,*[19] we considered whether statutory reporting requirements for political campaign-financing might be unconstitutionally vague, stating:

> The basic element of the doctrine of vagueness is a requirement of fair notice. Laws should give the ordinary citizen fair notice of what is and what is not prohibited. People should not be required to guess whether a certain course of conduct is one

---

**14.** This is not to be taken as a criticism of APOC or its instruction manual. Financial reporting rules are complicated and APOC obviously goes to great effort to explain these rules. APOC cannot be faulted for failing to identify and explain every possible situation requiring disclosure. But we must also recognize that financial reporting requirements are imposed on a broad swath of public servants, some more financially sophisticated and knowledgeable than others.

**15.** WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1894 (2002).

**16.** AS 24.60.200(2) (2007); AS 24.60.990(a)(7) (2007).

**17.** See *Torkko/Korman/Engineers v. Penland Ventures,* 673 P.2d 769, 773–74 (Alaska 1983) ("An

amendment to an unambiguous statute is generally presumed to indicate a substantive change in the law.").

**18.** See *Laborers & Hod Carriers Union, Local No. 341 v. Groothuis,* 494 P.2d 808, 811 (Alaska 1972) ("Although there may be a presumption that an amendment is intended to change legal rights rather than to interpret the preexisting law, the fact of amendment itself does not indicate whether the change is one of substance or of form. Since the amendment was enacted during the controversy which arose as to the interpretation of the original act, it is just as logical to regard the amendment as a legislative clarification of the original language and not a substantial change.").

**19.** 753 P.2d 703 (Alaska 1988).

which is apt to subject them to criminal or serious civil penalties.[20]

We need not decide whether the reporting requirements here were unconstitutionally vague. It is sufficient to hold, as we have for criminal penalties, that imprecise, indefinite, or ambiguous statutory or regulatory requirements must be strictly construed in favor of the accused before an alleged breach may give rise to a civil penalty.[21] Under this standard APOC may not impose a civil penalty against Stevens based on the facts and circumstances of this case.[22]

## IV. CONCLUSION

We AFFIRM the superior court's reversal of the civil penalty assessed against Stevens by APOC.

20. *Id.* at 714 (citing *Gottschalk v. State*, 575 P.2d 289, 290 (Alaska 1978) and *Stock v. State*, 526 P.2d 3, 8 (Alaska 1974)).

21. *See State v. Bernard*, 625 P.2d 311, 313 (Alaska 1981) ("It is axiomatic that 'a vague, imprecise, indefinite or ambiguous regulation, the breach of which carries a criminal penalty, should be strictly construed in favor of the accused.' " (quoting *Theodore v. State*, 407 P.2d 182, 189 (Alaska 1965))); *Higginson v. Westergard*, 100 Idaho 687, 604 P.2d 51, 55 (Idaho 1979) (relying on *Theodore v. State* and other cases to hold that ambiguities found in any statute, rule, or regulation imposing civil liability "should be resolved in favor of the adversary").

22. We therefore need not address Stevens's alternative argument that APOC may not impose a penalty against him because he cured any deficiencies in his original LFD filing by timely filing the LFD amendment in accordance with APOC's instructions.