STATE of Alaska, DEPARTMENT OF
CORRECTIONS, Appellant,

v.

Anita HENDRICKS–PEARCE, Personal
Representative of the Estate of
Dewell Pearce, Appellee.

No. S–13602.

Supreme Court of Alaska.

June 24, 2011.

Dale W. House, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellant.

Ted Stepovich, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

The State of Alaska provided a prisoner extensive medical care during his incarceration. Around the time of his release from custody, the prisoner won a medical malpractice judgment against the State. The State paid part of the judgment but, relying on a reimbursement statute, withheld the medical care costs associated with conditions unrelated to the malpractice claim. The State then sought declaratory judgment that it was entitled to reimbursement from the former prisoner. The superior court ruled that the statute does not authorize the State to seek reimbursement from former prisoners no longer in custody. Because we interpret the statute to allow post-release reimbursement of medical costs incurred during incarceration, we reverse the superior court's ruling and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

The State has a statutory and constitutional obligation to provide all prisoners necessary medical care regardless of their ability to pay.[1] The State provides prisoners medical care through its own Department of Corrections (DOC) employees and designated contractors (in-house medical care), but some

---

1. AS 33.30.011(4)(A); *Abraham v. State,* 585 P.2d 526, 531 (Alaska 1978); *Rust v. State,* 582 P.2d 134, 142 (Alaska 1978).

medical conditions require treatment by other providers (outside medical care).[2]

Dewell Pearce[3] was a prisoner from 1994 to 2008, and during his incarceration the State provided him medical care for a variety of conditions. The State claims it paid more than $150,000 for Pearce's 2001 to 2008 outside medical care.[4]

While in custody Pearce sued the State for medical malpractice. A March 2008 jury trial concluded in Pearce's favor and the court entered a $369,277.88 judgment against the State. In May 2008 the State paid part of the judgment, but withheld $140,847 as claimed reimbursement for Pearce's outside medical care unrelated to the injuries giving rise to the malpractice suit.[5] In July 2008 the State filed a declaratory judgment action regarding its reimbursement right under AS 33.30.028.[6] The record suggests that Pearce was released from custody sometime before the State filed this action.

In March 2009 the State moved for summary judgment, arguing that AS 33.30.028 makes inmates responsible for medical expenses they incur while in custody, and that

the State was entitled to reimbursement from Pearce. Pearce opposed that motion and filed a cross-motion for summary judgment. Pearce argued that AS 33.30.028 does not authorize reimbursement (1) for the cost of medical care "made available" by the State, which Pearce interpreted to mean outside medical care, in the absence of the financial resources listed in AS 33.30.028(a)(1)–(5) (specified funding sources), or (2) from former prisoners after their release from custody. Pearce also contended that the statute of limitations barred at least some of the State's claims, and that the State had waived its claims by not asserting them in the medical malpractice case. The State agreed in its reply that its claims should not include medical expenses incurred outside the limitations period, but maintained that AS 33.30.028 entitled it to reimbursement of approximately $137,000.

In June 2009 the superior court issued an oral decision denying the State's motion and granting Pearce's cross-motion. The court first rejected Pearce's waiver argument, noting that the State's reimbursement claim was

---

**2.** *Compare* 22 Alaska Administrative Code (AAC) 05.121(b)(1) (2004) (describing some medical care providers as "department employees" and "designated contractors"), *with* AAC 05.121(b)(2) (referring to prisoner "health care services not provided through department employees or designated contractors").

**3.** Dewell Pearce died in November 2009 and Anita Hendricks–Pearce, his estate's personal representative, was substituted in his place. For ease of reference we use "Pearce" throughout this opinion.

**4.** *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (holding if a "governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay").

**5.** *See id.* at 245 n. 7, 103 S.Ct. 2979 (stating "[n]othing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided"). Later decisions have cited this footnote for the limited proposition that at least some medical costs might be recovered from a prisoner who receives medical services at government expense. *See, e.g., Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir.2000); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1223 (E.D.Pa. 1996); *Williams v. Ergle*, 698 So.2d 1294, 1295 (Fla.Dist.App.1997).

**6.** AS 33.30.028 provides:

(a) Notwithstanding any other provision of law, the liability for payment of the costs of medical ... care provided or made available to a prisoner committed to the custody of the commissioner is, subject to (b) of this section, the responsibility of the prisoner and the

(1) prisoner's insurer if the prisoner is insured ...;

(2) Department of Health and Social Services if the prisoner is eligible for assistance ...;

(3) United States Department of Veterans Affairs if the prisoner is eligible for veterans' [medical] benefits ...;

(4) United States Public Health Service, the Indian Health Service, or any affiliated group or agency if the prisoner is a Native American and is entitled to medical care from those agencies or groups; and

(5) parent or guardian of the prisoner if the prisoner is under the age of 18.

(b) The commissioner shall require prisoners who are without resources under (a) of this section to pay the costs of medical ... care provided to them by the department. At a minimum, the prisoner shall be required to pay a portion of the costs based upon the prisoner's ability to pay.

unrelated to Pearce's medical malpractice claim and therefore was not a compulsory counterclaim.[7] The court then concluded that the term "prisoner," by statutory definition, includes only persons currently held in custody. Because Pearce was no longer a "prisoner," the court determined he had no liability to the State for his previous medical expenses.

The State moved for reconsideration. The superior court denied the motion and entered final judgment for Pearce in July 2009. The State appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, "affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[8] Both parties advocate that we exercise de novo review for statutory interpretation. De novo review is appropriate to the extent that we are called upon to review DOC's interpretation of the term "prisoner" in AS 33.30.028; we use our independent judgment to review agency interpretations of statutory terms that do not implicate agency expertise, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[9]

## IV. DISCUSSION

### A. Pearce Is A "Prisoner" For Purposes Of AS 33.30.028.

### 1. Alaska Statute 33.30.028 is ambiguous and does not conclusively limit liability for medical costs to current prisoners.

The State argues a prisoner's responsibility for medical costs under AS 33.30.028 is not discharged upon release from custody. It contends the superior court's interpretation is inconsistent with the statute's legislative purpose of shifting medical costs to prisoners to the fullest extent possible.

Pearce responds that the reimbursement language of AS 33.30.028 is clear and unambiguous in using the word "prisoner" to describe only an individual who is currently incarcerated. The superior court adopted this interpretation in its decision, relying on the definition of "prisoner" found in AS 33.30.901(12)(A): "a person held under authority of state law in official detention as defined in AS 11.81.900(b)."[10]

Although we follow the legislature's specific definitions of terms where provided,[11] we recognize that statutes frequently identify parties based on a prior status that conferred certain rights and duties. Enforcement of those rights or duties is not necessarily conditioned on retention of that status—whether a term refers to current or former status depends on the statute's specific context and intent. For example, the Uniform Residential Landlord and Tenant Act provides that if a "tenant" terminates a rental agreement under specific circumstances, the "tenant" may subsequently recover pretermination damages.[12] The party recovering damages no longer is a "tenant" under the statutory definition—"a person entitled under a rental agreement to occupy a dwell-

---

7. *See* Alaska R. Civ. P. 13(a) (stating compulsory counterclaim "arises out of the ... occurrence that is the subject matter of the opposing party's claim"). Pearce does not contest this ruling.

8. *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008) (citing *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007)).

9. *Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1089 (Alaska 2008).

10. AS 11.81.900(b)(40) defines "official detention" as "custody, arrest, surrender in lieu of arrest, or actual or constructive restraint under an order of a court."

11. *Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1287 (Alaska 2010) ("With a few narrow exceptions, we do not construe statutory language according to its common meaning when the legislature has provided a definition of a word or phrase ...."); *see also* AS 01.10.040(a) ("Technical words and phrases and those that have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning.").

12. AS 34.03.160(a)–(c); AS 34.03.210.

ing" [13]—and the term therefore refers to the tenant's status when the right to recovery arose. Similarly, even though an "employee" under the Alaska Workers' Compensation Act is "an employee employed by an employer," [14] workers' compensation benefits are not limited to current employees; for example, the work-related death of an employee precludes further "employee" status but does not preclude later compensation benefits for the work-related death.[15]

Both Pearce and the State draw conclusions from AS 33.30.028's failure to expressly include former prisoners. The State argues that if the legislature intended to relieve former prisoners of liability, the statute would have indicated that medical costs "are the responsibility of the prisoner, but only during the period of the prisoner's incarceration." Pearce argues that to impose liability on former prisoners would require explicit inclusion, citing as an example the Missouri Incarceration Reimbursement Act, which provides that the attorney general may "seek

to secure reimbursement for the expense of the state of Missouri" if "an offender *or former offender* has sufficient assets" to repay the state.[16] But these arguments simply reinforce the impossibility of assigning a "plain meaning" to "prisoner" without reference to AS 33.30.028's legislative history and purpose.[17]

### 2. Extending liability for medical costs to former prisoners is consistent with AS 33.30.028's legislative history and purpose.

Pearce contends that the legislative history of AS 33.30.028 does not indicate intent to allow the State to seek reimbursement from prisoners after their release from custody. We disagree.

■ The primary goal of AS 33.30.028 is reducing medical costs: the legislation that led to the reimbursement statute's enactment was directed at controlling the costs incurred in correctional institutions,[18] and the sponsor

---

**13.** AS 34.03.360(21).

**14.** AS 23.30.395(19).

**15.** *See, e.g.*, AS 23.30.010(a) (stating compensation benefits are payable "for disability or death or the need for medical treatment of an employee"); AS 23.30.041(c) (discussing reemployment benefits for injured "employee" totally unable for certain period of time to return to "employee's employment"); AS 23.30.095(a) (requiring employer to pay medical expenses for up to two years after "employee's" injury); AS 23.30.105(a) (requiring an "employee" to file claim for disability within two years after employee has knowledge of disability's nature and relation to employment). It is not surprising that our workers' compensation case law is replete with claims for compensation by former employees. *See, e.g., Shehata v. Salvation Army*, 225 P.3d 1106, 1109 (Alaska 2010); *Kim v. Alyeska Seafoods, Inc.*, 197 P.3d 193, 194 (Alaska 2008).

**16.** Mo. Ann. Stat. § 217.831(3) (West 2011) (emphasis added).

**17.** Pearce cites *State v. Merry*, 784 P.2d 253, 256 (Alaska App.1989) (concerning computation of eligibility for parole under former AS 33.15.080) for the single-sentence proposition that when "interpreting statutes in AS 33.30, ambiguities in the statutes must be construed against the government and in favor of the individual." But the court of appeals's full statement is as follows:

> Although we strictly construe criminal statutes, "[s]trict construction does not require that

> statutes be given the narrowest meaning allowed by the language; rather, the language should be given 'a reasonable or common sense construction, consonant with the objectives of the legislature.' "

*Id.* (quoting *Belarde v. Anchorage*, 634 P.2d 567, 568 (Alaska App.1981)). And Pearce makes no effort beyond his single-sentence proposition to develop an argument that medical reimbursement is a statutory penalty for which a narrow interpretation might be necessary. *Cf. Alaska Pub. Offices Comm'n v. Stevens*, 205 P.3d 321, 326 (Alaska 2009) (holding that, as with criminal penalties, "imprecise, indefinite, or ambiguous statutory or regulatory requirements must be strictly construed in favor of the accused before an alleged breach may give rise to a civil penalty"). We reject Pearce's proposed statutory interpretation rule for AS 33.33.028.

Pearce also argues that "[i]n light of the constitutional principles underlying the right to adequate health care, ... any statute that purportedly gives the State the right to seek reimbursement must be specific in its scope and intent." Neither the cases cited in Pearce's brief nor any other cases appear to support this proposition, and *City of Revere* implies that a prisoner's constitutional right to receive medical care does not limit a state's ability to seek reimbursement for that care. *See* 463 U.S. at 245, 103 S.Ct. 2979.

**18.** Minutes, House Judiciary Standing Comm. Hearing on H.B. 219, 19th Leg. 1st Sess. (Mar. 24, 1995) (Testimony of Rep. Eldon Mulder).

statement indicated the proposed measures would "reduce some of the costs of inmate health care and allow [the State] to focus its limited budget on its true mission."[19] Although the legislative history does not explicitly address extending liability to former prisoners, preventing the State from collecting from prisoners to the fullest extent possible would contravene the statute's cost-saving purpose and is not justified by another interest evident from the face of the statute or its legislative history.

The superior court's narrow interpretation of "prisoner" would also lead to anomalous consequences which, in our view, the legislature did not intend. Shielding former prisoners from liability for medical costs, as the State points out, "subjects both prisoners and [the State] to a limitations period for reimbursement that is [dependent] upon how much of the prisoner's sentence remains when [the State] provides medical care. That time period bears no reasonable relationship to the statute's purposes." Conditioning the State's right to reimbursement on the timing of medical care would also result in inequitable treatment of prisoners and their specified funding sources, whose liability would vary depending on when the prisoner's medical condition arose or was treated. And prisoners would have incentive to delay seeking medical care until as late as possible in their sentence, hoping that the State would run out of time to seek reimbursement before their release.

### 3. Conclusion

■ Based on the foregoing, and without needing to consider DOC's interpretation to dispel any lingering ambiguity,[20] we interpret "prisoner" to include former prisoners for the application of AS 33.30.028. We therefore reverse the superior court's ruling that the State is not authorized to seek medical cost reimbursement from Pearce under AS 33.30.028.

### B. We Remand For Further Proceedings On Whether AS 33.30.028 Allows Reimbursement For Pearce's Outside Medical Care.

■ The superior court did not address the other statutory interpretation question raised in the summary judgment briefing—whether AS 33.30.028 entitles the State to reimbursement for the cost of outside medical care from a prisoner without the specified funding sources.

Pearce argues the statute allows reimbursement for the cost of outside medical care only from the specified funding sources. Pearce suggests a dichotomy based on differences in the subsections' language: under subsection .028(a), liability for medical care *provided or made available* to a prisoner is "the responsibility of the prisoner and the [specified funding sources]."[21] But under subsection .028(b), prisoners without the specified funding sources are required to pay only for medical services *provided to them by the department*" and then only to the extent of their ability to pay.[22] Pearce argues this language distinguishes between two types of medical care: in-house medical care "provided" to a prisoner by in-house providers, and outside medical care "made available" to a prisoner through outside providers. Pearce's interpretation also distinguishes between two types of prisoners: under subsection .028(a), prisoners who have access to the specified funding sources, and under subsection .028(b), prisoners who lack the specified funding sources. He concludes that only prisoners with the specified funding sources are responsible for the cost of outside medical care "made available" to them, while those who, like Pearce, lack the

---

19. Rep. Eldon Mulder, Sponsor Statement for H.B. 219, 19th Leg. 1st Sess. (March 21, 1995).

20. *See Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.,* 110 P.3d 1254, 1261 (Alaska 2005) (citing *Union Oil Co. v. State, Dep't of Revenue,* 560 P.2d 21, 23, 25 (Alaska 1977)) (noting agency interpretation may help resolve "lingering ambiguity" even when applying independent judgment).

21. AS 33.30.028(a) (emphasis added). These sources include the prisoner's personal insurance, Department of Health and Social Services benefits, veterans' benefits, Indian Health Service benefits, and the parent or guardian of a minor prisoner. *Id. See* note 6, above.

22. AS 33.30.028(b) (emphasis added).

specified funding sources are not responsible for the cost of such outside medical care. Pearce contends this interpretation is supported by DOC's own regulation governing prisoner co-payments, 22 AAC 05.121.[23]

The State contends that liability for the cost of outside medical care is imposed by AS 33.30.028(a) on *all* prisoners, regardless of their access to the specified funding sources, and that AS 33.30.028's legislative history provides no support for a distinction between medical care "provided" and "made available." It argues that 22 AAC 05.121 is not relevant to its reimbursement claim against Pearce because the co-pay program established by the regulation is independent of the statute's reimbursement provision. The State also argued before the superior court that its interpretation of the statute "merit[ed] some deference" as an agency interpretation.

 Pearce's reading of AS 33.30.028 is not implausible, and the statute's relevant language may be ambiguous. Although the current record devotes attention to the legislative history of AS 33.30.028, we are not confident it alone provides sufficient information to allow us to fully address the statutory interpretation question left open by the superior court. The State's interpretation may be entitled to at least some deference, depending on the applicable standard of review for interpreting the relevant language;[24] in the absence of full briefing on the issue, we decline to decide which standard of review applies to this aspect of the parties' competing statutory interpretations and leave that matter for the superior court to determine in the first instance.

We believe judicial interpretation of the statute requires a determination of the appropriate standard of review and further record development regarding the State's statutory interpretation as it may be reflected in: (1) promulgation of 22 AAC 05.121; (2) promulgation of department policies and procedures pursuant to AS 33.30.028 and 22 AAC 05.121; (3) other reimbursement-enforcement actions based on the statute; and (4) any other relevant sources. We therefore remand this question to the superior court

---

**23.** 22 AAC 05.121 provides in relevant part:
 (a) A prisoner will be provided medically necessary health care services regardless of the prisoner's ability to pay or arrange for payment or coverage for the services. . . .
 (b) Except as provided in (c) and (d) of this section, a prisoner
 (1) is financially responsible for a co-payment for health care services provided to the prisoner by the department through department employees or designated contractors; and
 (2) shall arrange for the department to obtain payment or coverage from one or more of the responsible parties set out in AS 33.30.028(a), if the prisoner receives health care services not provided through department employees or designated contractors.
 . . . .
 (e) Notwithstanding (a)–(d) and (g) of this section, a prisoner may be charged for the full cost of health care services provided by health care providers other than department employees or designated contractors, resulting from a self-inflicted injury, or an injury to the prisoner or to another prisoner resulting from an assault or other violation of facility rules or state law by the prisoner.
 (f) A prisoner who is provided health care services by a departmental employee or designated contractor is financially responsible for the following co-payments. . . .

**24.** When an agency interprets a statute we review the interpretation under one of two standards: the reasonable basis standard, if the interpretation at issue "implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions"; or the independent judgment standard, if "the agency's specialized knowledge and experience would not be particularly probative on the meaning of the statute." *Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166, 175 (Alaska 1986). We note that even when applying our independent judgment, "we have recognized that an agency's interpretation of a law within its area of jurisdiction can help resolve lingering ambiguity, particularly when the agency's interpretation is longstanding." *Bartley,* 110 P.3d at 1261 (citing *Union Oil Co.,* 560 P.2d at 23, 25). We also note that to the extent the State's interpretation of the statute is embodied in a regulation, we review an agency's interpretation of its own regulation applying the reasonable basis standard, "defer[ring] to the agency unless its 'interpretation is plainly erroneous and inconsistent with the regulation' . . . [because] the agency is best able to discern its intent in promulgating the regulation at issue." *Kuzmin v. State, Commercial Fisheries Entry Comm'n,* 223 P.3d 86, 89 (Alaska 2009) (internal citation omitted).

for further proceedings.[25]

## V. CONCLUSION

For the reasons set forth above, we RE-VERSE the superior court's summary judgment ruling, VACATE the judgment, and REMAND for further proceedings.

STOWERS and CHRISTEN, Justices, not participating.

25. We also leave to the superior court any considerations that the State's recovery, if allowed, may be subject to a claim for attorney's fees and costs incurred by Pearce in establishing what might be considered a common fund the State has essentially liened for its recovery.